MAHER, APPELLEE, *v.* THE CLEVELAND UNION STOCK-YARDS CO., APPELLANT.

(Decided June 27, 1936.)

*Mr. John H. Hogg* and *Mr. Harry W. Lower,* for appellee.

*Messrs. Squire, Sanders & Dempsey,* for appellant.

SHERICK, J. The defendant, The Cleveland Union Stockyards Company, appellant herein, appeals to this court upon a question of law from a judgment adverse to it in the sum of $2,130.41. The cause was tried to the court upon an agreed statement of facts without the intervention of a jury. The plaintiff, Anna Maher, appellee herein, pleaded in substance the relevant facts hereinafter to be enumerated, and asked for equitable relief and for a money judgment. The answer filed admitted certain facts, and then denied the plaintiff's claim generally. From the pleadings and agreed facts the following is established:

In 1897 Michael Maher, the father of the plaintiff, owned a two-acre tract of land fronting on Ridge road. It did not abut upon any other public way. The rear portion of this long and narrow tract adjoined a parcel of land leased and occupied by the Farmers' & Drovers' Stock Yards Company. This parcel had an insufficient or no outlet. Michael Maher and other property owners conveyed to the Farmers' & Drovers' Stock Yards Company a strip of ground thirty feet in width off the rear of their respective properties. This

strip would thereafter necessarily become the south half portion of Storer avenue when and if it were produced. The consideration for the Maher deed was $2. The instrument, however, contained the following covenant:

"As a part of the consideration of this deed, said grantee agrees to protect and save harmless said grantor from all assessments for the opening of Storer avenue from the center of Gordon avenue 462 feet and 10 inches west as to said grantor's adjoining or abutting property."

After the Farmers' & Drovers' Company procured this strip of land adjacent to its leasehold, it purchased the premises which it occupied as lessee. Thereafter, in 1903, the Farmers' & Drovers' Company sold all its assets, except cash and accounts receivable, to the appellant, free and clear of encumbrances, for capital stock of the appellant company of the par value of $450,000. It was thereafter presumably dissolved. It was not specifically contracted that the appellant would assume the obligations of its vendor. The deed passed for the conveyance of the Maher strip did, however, recite "and being the same land and subject to the same conditions contained in the deed from Michael Maher to The Farmers' & Drovers' Stock Yards Company, dated December 8th, 1897, and recorded in Volume 676, page 216."

In 1914 Michael Maher conveyed the remainder of his two acre tract of land to his daughter, the appellee herein, for a valuable consideration. This instrument contains no assignment of any claim or possible cause of action against the Farmers' & Drovers' Company. Michael Maher died in 1921. Thereafter in 1927, the city of Cleveland commenced proceedings to extend Storer avenue. The south half of the avenue so produced utilized the Maher strip acquired by the Farmers' & Drovers' Company, as also the like strips pur-

chased of the two property owners lying between it and Gordon avenue. The sale price of the total strip was $1,263. The Maher portion was sold for $300. The north portion or half of Storer avenue produced was sold by the appellant to the city for the lump sum of $12,000. The assessments levied as against the Maher property for the opening of Storer avenue amount to $1072.36. The penalty for delay in payment and the interest accrued thereon amount to $88.71 and $264.15, respectively.

In 1931 the city laid a sewer in Storer avenue. That portion of its cost assessed against the Maher tract is $613.33. The penalties and interest which now accompany this assessment amount to $38.38 and $53.48. . It is stipulated that demand was made by the appellee upon the appellant to pay these assessments, which it refused. The trial court upon this state of the record made a ''decree and finding for plaintiff'' and entered judgment against the appellant in the sum of $2130.41, but subject to a diminution if the city's assessment claims were settled for a less sum, or to be enlarged by any subsequently accruing penalties and interest.

The appellant urges two grounds of error: First, in that the decree and judgment are not sustained by sufficient evidence and are contrary to law, and should have been in favor of the appellant; second, in that the amount of the recovery against it is too large. If the first error complained of is meritorious it necessarily follows that the second claimed error need not be considered. We shall therefore proceed to first consider the principal question made.

It is maintained by the appellant that the covenant did and could not run with the land and that the predecessor parties never so intended. It is also urged that the covenant is but a personal and collateral promise, which did not create a servitude or charge

upon the 30-foot strip in favor of the two-acre tract, and that any such obligation was never assumed by it, and that the covenant is not such a one as equity recognizes as binding upon it.

If an analyzation of the host of reported cases were to be attempted we should quickly find ourselves enmeshed in a prolixity of legal reasoning and conflicting theories as applied in the various jurisdictions. We perceive a point of difference in the cause before us which we are unable to find considered in any reported case. That distinction lies in the fact that the covenant or condition contained in the Maher deed to the Farmers' & Drovers' Company is, in fact, a postponement of the payment of the actual consideration for the premises conveyed. It is evident that the sum of $2 was but the nominal and not the actual consideration agreed upon. The covenantee and the covenantor well knew that when and if Storer avenue was produced the cost thereof would be considerable and that the residue of the two acre tract would then be an abutting property to the street improvement and subject to assessment for the cost thereof. It was the present lack of benefit to Maher's land, and the future probability of a heavy charge, and the immediate and future benefit to the Farmers' & Drovers' Company's business activity that actuated the parties in postponing payment of the actual consideration for the transfer which could not then be estimated. It therefore appeals to this court that the Farmers' & Drovers' Company secured but the bare legal title to the 30-foot strip, and that the equities therein retained by Maher would only be divested upon the payment of the actual consideration yet to be paid. The Farmers' & Drovers' Company accepted this deed as written. It obligated itself to pay that consideration when, if and in the amount subsequently ascertainable.

We next observe that it is now generally recognized

that the fact that the deed did not contain the word "assigns," or that the covenant or condition thereafter to be performed was not then *"in esse,"* is relatively unimportant. Employment of the word, and the fact that the thing is then in being, are helpful, but the absence thereof is not conclusive as to whether the condition is attached to enjoyment of, or is a burden upon the tract conveyed, and a continuing benefit to the adjoining land retained by the grantor. Whether a covenant is personal or one that runs with the land, conceding that its purpose and effect are not antagonistic to existing law or recognized public policy, is, as said in 4 Thompson on Real Property, Section 3425, "a question of intention, to be determined from the words of the deed, from the circumstances of the conveyance, and from the situation of the property at the time." The author continues, "It will be regarded as personal merely unless an intention to the contrary appears or may be presumed. If the adjoining land belongs to the covenantee, and is manifestly benefited by the restriction, there may be a presumption that it was intended for the benefit of that land. But the restriction will be regarded as personal to the covenantee, and will not pass by transfer of the land unless there is something to indicate an intention that the restriction be attached to the land." In the present controversy the matter is not in fact a restriction but is in truth the future performance of an affirmative act. It is not similar to a promise to refrain from building a livery stable upon the premises conveyed, but is similar to a promise to build and maintain a fence, as in the railroad cases, or, better still, is similar to a promise to furnish water to the grantor's land retained.

Turning now to the covenant, and by eliding therefrom that which is unimportant and confusing, it is prescribed that "As a part of the consideration of this

deed, said grantee agrees to protect and save harmless said grantor from all assessments for the opening of Storer avenue * * * as to said grantor's adjoining or abutting property.'' One is presumed to contract in accordance to the provision of existing law. It will be remembered that the old statute which assessed the cost of street improvement directly against the owner of the land benefited, and not against the land itself, had been previously repealed, and lands were then, as now, assessed only for benefits conferred. Maher was not personally assessable for the contemplated improvement, but his land was directly responsible. The Farmers' & Drovers' Company did not agree to reimburse Maher, but to protect him against payment of the assessments which might thereafter be levied against his land. In other words, when and if the land was assessed, the Farmers' & Drovers' Company agreed to pay to the city the amount of the assessment levied. It did not agree to personally pay Maher, but that it would pay the city and thereby save Maher harmless. It is now ingenuously argued that the action may not now be maintained, because only a personal promise existed to pay, which payment the present owner has refused to make. The argument is fallacious, for it must be remembered that the present situation which the breach creates is not the crux of the promise, but the breach of the thing which the grantee agreed to do, to wit, pay the assessment which the city might and did thereafter levy against the residue of the Maher land.

The question now comes: Did the appellant assume this obligation? It most certainly did, even if the word "assigns" was omitted and it did not expressly assume its payment in the deed to it. When it accepted Drovers' deed, containing the clause, "and being the same land and subject to the same conditions contained in the deed from Michael Maher to The Farmers' &

Drovers' Stockyards Company," it not only had constructive notice, but had actual notice of the fact that the actual consideration for the 30-foot strip had not been paid. The earlier deed was of record. It must have been known that only the nominal consideration had been paid and that it acquired but a bare legal title. It certainly and clearly appeals to this court that it would be most unequitable to permit these two companies to enjoy for forty years the benefit of their purchase, and to sell the strip to the city for a valuable consideration, and then be heard to say that they were not bound to pay the actual purchase price of that which they enjoyed and sold, to wit, pay the consideration, which was the assessment levied against the two-acre tract. It is said that estoppel is not pleaded. When a pleading and agreed facts disclose that which is unconscionable and unjust, courts should not be and are not blind to all existing equities. Even though not fully pleaded, estoppel has frequently been applied in this state when it arises from matters of record. A very apt statement is found in 11 Ohio Jurisprudence, 883. It is there said:

"The need to-day for deciding whether a covenant is one which technically runs with the land has been obviated in a great many cases by the co-existence of several factors. One factor is the enforcement, in equity, of covenants pertaining to the land, but which do not run with the land at law, against those grantees of the covenantor who are not bona fide purchasers for value; that is, those who take the estate of the covenantor with actual or constructive notice of the existence of the covenants, or those who do not pay value for the estate. Another factor is the recording acts, which make the recording of instruments affecting real property constructive notice to all the world of the provisions contained in those instruments. The consolidation or merger of the law and equity, and the

abolition of the common-law forms of action, are another factor."

May the appellee as grantee of the covenantee of the residue of the tract enforce the covenant as against the appellant? If we are correct in that the condition is a covenant running with the land, and is not a personal and collateral one, then she has the capacity without question as a matter of law.

Considering the matter from its equitable standpoint we remark that the pleading or agreed facts do not recite that appellee's deed was a quit-claim. But in brief and oral argument it is asserted and not denied that the instrument is of that character. This we therefore assume to be true. It is not only the law that one may completely pass all his interest and title to realty by such a conveyance, but it is also the law that the grantee therein takes the land subject to all existing equities against it. However, it is equally true that such a deed passes all equities existing beneficial to the estate conveyed which the grantor thereof might have enforced. It must follow that the appellee acquired by her deed to the residue of the two-acre tract all the equities possessed by her father, the grantor, even if the deed did not specifically say so, for the presumption, which is not questioned, is that she was a *bona fide* purchaser for value. We therefore find her in privity with the covenantee. Two maxims of equity are directly pertinent. Equity imputes an intention to fulfill an obligation and regards as done that which ought to be done. She may maintain the action.

Keeping in mind the rule of intention of the covenanting parties, we are unable to percieve how the language thereof may be considered to include the assessment cost of sewering Storer avenue extension. Many streets in the past were opened and not sewered. The sewering was done several years after the opening of the street. If sewerage assessments of a later date are

included within the meaning and intent of the covenant, then it might as logically be said that sidewalk or other assessments made at this time were also included. We hold that in the inclusion in the judgment of the sewer assessment and the interest and penalties thereto attached, the trial court erred. In this respect the judgment must be modified.

One question yet remains. Should the judgment have been for the sale price to the city of the thirty-foot strip, to wit, $300, or should it have been for the amount of the street opening assessment and the interest and penalties? It is our judgment that the latter is the correct amount. The covenantor and the appellant did not promise to pay their sale price of the strip, but agreed to pay the assessment for street opening. The Maher's had no part in fixing that price. To hold otherwise is to permit the stockyard companies to enjoy their grant for some thirty years for the sum of $2. They might have sold to the city for the sum of $1, which, upon appellant's theory, was not a matter with which the Mahers might be concerned. We may not permit the appellant to re-write the contract and designate the sale price.

It is ordered that the judgment be modified as indicated herein, and that the appellant be ordered to cause to be paid to the city of Cleveland the assessment levied for the opening of Storer avenue, including interest and penalties due to the time of payment, as are or may be levied against the residue of the two-acre tract; that in default of prompt payment judgment be entered in appellee's favor against the appellant in the sum of the total amount thereof, upon which execution may issue.

This judgment is modified and affirmed as modified.

*Judgment modified and affirmed.*

LEMERT, P. J., and MONTGOMERY, J., concur.

LEMERT, P. J., MONTGOMERY and SHERICK, JJ., of the Fifth Appellate District, sitting by designation in the Eighth Appellate District.