Submitted on briefs August 28, affirmed October 9, 1957

HODGES ET UX *v.* SERVINE ET UX

316 P. 2d 312

Winslow & Winslow, Tillamook, for appellants.

Geo. R. Goodrich and McMinimee & Kaufman, Tillamook, for respondents.

LUSK, J.

This is an appeal by Leo Servine and Virginia Servine, his wife, hereinafter referred to as the defendants, from a decree of strict foreclosure of a contract for the sale of real and personal property.

The contract was entered into March 9, 1953, by and between the plaintiffs as vendors and Ida I. Campbell as vendee. The property covered by the contract consists of two lots in Midway Addition to Rockaway, Tillamook County, Oregon, and eight cottages located upon them, together with their furniture and equipment. The agreed purchase price was $23,000, of which $11,500 was paid at the time of the execution of the contract by the transfer of certain real property owned by the vendee to the vendors. A mortgage against the

real property in the principal sum of $9,935.04, which called for payments of $150 a month, was assumed by the vendee, and $1,564.96, the balance, was agreed to be paid at the rate of $50 per month, which included interest at the rate of six per cent per annum on the unpaid balance.

In July 1953 the contract was assigned by Ida I. Campbell to the defendants, who went into possession of the property shortly thereafter and commenced to make payments under the contract to the plaintiffs.

On June 16, 1954, the defendants were four months in arrears in the payments stipulated in the contract, and the plaintiffs on that date by their attorney notified the defendants by letter that, if the contract was not brought up to date within 30 days, they would commence suit to foreclose defendants' interest in the property. About June 25, 1954, the plaintiffs granted the defendants orally an extension of time to give them an opportunity to trade their property or otherwise protect their equity. A similar arrangement was made about August 1, 1954, at which time the defendants listed the property for sale. Nothing came of this, however, and no further payments were made on the contract except $50 on August 30, 1954, and $50 on September 2. On October 20, 1954, plaintiffs' attorney again wrote the defendants notifying them that unless the contract was brought up to date within 30 days they would commence suit to foreclose. The letter was received by the defendants on October 22, 1954. They made no further payments, and on November 23, 1954, the plaintiffs commenced this suit. An amended complaint was filed on December 28, to which the defendants filed an answer in which they denied that they were in default (though there is no issue as to this now), and alleged substantially the following matters:

(1) that plaintiffs had waived strict performance of the contract in respect of the time and manner of making the agreed payments; (2) that plaintiffs had breached the contract by failing to execute and deliver to the defendants a deed to the property in accordance with a provision of the contract; (3) that the plaintiffs had repudiated and rescinded the contract and the defendants joined in such rescission and tendered immediate possession of the property free and clear of any claim or lien of the defendants except a lien for the amount of the payments received by the plaintiffs under the terms of the contract. Defendants prayed for judgment for such amount and for the value of certain permanent improvements alleged to have been made by them, less the reasonable value of the use of the property during the time that they were in possession.

*Waiver of Time Essence Clause*

The contract recites that time is "of the essence hereof," and provides that in case of default on the part of the vendee

"after 30 days written notice by the Vendors of their intention so to do, the Vendors may elect to declare this agreement ended and repossess themselves of said premises and this agreement shall become null and void, and all sums paid by the Vendee prior to such default shall be retained by the Vendors and the Vendee undertakes and agrees that in case of such default and if the same be not remedied within said 30 day period, that she will quit and surrender the possession of said premises to the Vendors * * *."

Waiver of a time essence clause may be effected by the acceptance of past due payments without insistence upon punctuality, and, when once waived, the provision for forfeiture is of no avail to the vendor unless he first gives to the purchaser reasonable notice

of his intention in the future to insist upon strict performance on his part upon the terms of the contract. *Grider v. Turnbow,* 162 Or 622, 641, 94 P2d 285. Plaintiffs' letter to the defendants of October 20, 1954, constituted reasonable notice in the circumstances of this case. The rule to which we have referred, it should be emphasized, is the rule regarding forfeiture. The rule is different as to a suit for strict foreclosure prematurely instituted. *Grider v. Turnbow,* supra at 643; *Zumstein v. Stockton,* 199 Or 633, 643, 264 P2d 455. The defendant in such a suit has a right to stay the proceedings by a proper plea in abatement, and the premature bringing of such a suit does not amount to a repudiation of the contract enabling the vendee to effect a mutual rescission by declaring his election to treat the contract as cancelled by the vendor. In this case, however, the suit was not brought until after reasonable notice was given, and it was not premature.

*Mutual Rescission*

The contention of the defendant in this regard is based principally on Paragraph VIII of the initial complaint, which reads:

"That ever since the 22nd day of October, 1954 the Plaintiffs have been and now are the owners of and entitled to the possession of the above described real premises and personal property; that the Defendants and each of them ever since said date have been and now are unlawfully withholding from the Plaintiffs the possession of said premises."

Defendants argue that the initial complaint is one to recover the possession of real and personal property; that, if its allegations are true, the vendors had repudiated the contract as early as October 22, 1954; and that this repudiation was promptly accepted and acquiesced in by the defendants, thus effecting a mutual rescission.

The complaint must be viewed as a whole. *Grider v. Turnbow,* supra at p 639. So viewed, though ineptly drawn, it states a cause of suit for strict foreclosure of the contract. The prayer asked for that remedy and for attorneys' fees. The latter claim is inconsistent with the theory that the plaintiffs had declared a forfeiture. *Zumstein v. Stockton,* supra at p 638. Contrary to the allegations of Paragraph VIII of the original complaint, it is not true that the plaintiffs as early as October 22, 1954, had repudiated the contract. On the contrary, on that day the defendants received from the plaintiffs the notice that if they did not bring the contract up to date within 30 days the plaintiffs would commence suit to foreclose. Paragraph VIII can only be regarded as an inaccuracy based upon a misconception of the law. Nor is it true that the defendants promptly acquiesced in the alleged rescission. The record in this regard is as follows:

After service of the complaint on defendants they consulted their attorney, who, under date of November 30, 1954, wrote to plaintiffs' attorney a letter which contained an offer of compromise and continued:

"We may attempt to recover back from Mr. and Mrs. Hodges the value of the property which they received under this contract, as well as the money which they have received. The conduct of Mr. and Mrs. Hodges in connection with this contract may authorize Mr. and Mrs. Servine to rescind the contract, accept the repudiation of the same by Mr. and Mrs. Hodges and to recover payments made under the contract, including the value of the down payment."

These statements may be regarded as a veiled threat, but certainly not as an acceptance of the plaintiffs' alleged repudiation of the contract. Nor does the record bear out the claim in defendants' brief that

before plaintiffs filed their amended complaint defendants "vacated the property and * * * accepted [plaintiffs'] repudiation." They did vacate the property, but the defendant Leo Servine's answer to the question "What was the cause of your leaving after the service of the complaint?" was "The payments." And Mrs. Servine testified "Well, we made arrangements with the caretaker that he was speaking about. We made arrangements to find someone to stay there so that nothing would happen to the property until Mr. Hodges would take over." Nor do the pleadings support defendants' contention. Their first pleading was a motion filed December 3, 1954, to make the initial complaint more definite and certain by setting forth an itemized statement of all payments made by the defendants. The motion was allowed, and on December 28, 1954, the plaintiffs filed an amended complaint which omitted the offending Paragraph VIII of the initial pleading. Notwithstanding this omission defendants, by their answer filed January 7, 1955, attempted to deny the allegations of Paragraph VIII, which were now out of the case so far as the pleadings were concerned. By their affirmative answer the defendants alleged that the plaintifffs claimed that they were owners of the property and entitled to its immediate possession ever since October 22, 1954; that defendants' possession of the property was unlawful; that plaintiffs have commenced proceedings to recover possession of all of said property and to quiet title to it, and have repudiated and rescinded the contract. They further allege that defendants have elected to accept said repudiation and rescission. This was the first attempt by the defendants to join in an alleged rescission by the plaintiffs.

■ Even though Paragraph VIII of the initial com-

plaint constituted a repudiation of the contract, it was too late after the abandonment by the plaintiffs of the allegations of that paragraph and after the filing of the amended complaint for the defendants to make their claimed election. *Grider v. Turnbow,* supra at 639.

■ The amended complaint is far from a model pleading. It contains, as did the initial complaint, language appropriate to an action in ejectment or a suit to quiet title. But it states a cause of suit in strict foreclosure, and was brought for the purpose of obtaining that relief. The absence of an allegation that the plaintiffs were ready, able and willing to perform is not a fatal defect. *Zumstein v. Stockton,* supra at 645.

Practically all the questions raised by the defendants are answered adversely to them by the Grider and Zumstein cases. The latter contains a full review of our prior decisions. We deem it unnecessary to go over that ground again or to comment on obviously distinguishable cases cited by the defendants.

## Other Contentions of the Defendants

The contract provided that

"after the Vendee shall have paid to the Vendors Sixty Per-cent (60%) of the principal amount due under this agreement together with interest then and in that event the Vendee may demand and receive from the Vendors the warranty deed hereinbefore provided and execute and deliver to the Vendors a mortgage securing payment of balance which shall be evidenced by a promissory note executed by the Vendee as of the date of said mortgage."

■ Defendants argue that the amount stipulated in this provision had been paid, and, therefore, they are entitled to a deed and plaintiffs are not entitled to a

decree. The agreement was that the vendee may *demand* and receive a deed, and that the right to receive a deed was dependent upon the execution by the vendee of a note and mortgage for the balance owing on the contract. It is sufficient answer to defendants' contention that there is no evidence that they ever made such a demand. The allegation with reference to it in their answer is not a demand but a charge of a breach of the terms of the contract. The evidence does not sustain that charge.

By its decree the court allowed the plaintiffs an attorney's fee in the sum of $500. A provision of the contract authorized such an allowance, but defendants say that this provision is not binding on them because they did not assume the obligations of the contract but merely accepted a bare assignment. The general rule is that the assignee of a contract for the purchase of land or other property assumes no liability to the vendor by reason of the assignment alone. *Urban v. Phy,* (9th Cir) 24 F2d 494; *Coos Bay Wagon Co. v. Crocker,* 4 Fed 577, 587. But "Where the assignee claims the benefits of the contract he becomes subject to its burdens as fully and to the same extent as though he were the original party to the contract." 92 CJS 199, Vendor and Purchaser § 311. Without expressing our approval, we take note of the fact that the Restatement of the Law of Contracts, § 164, provides that acceptance by the assignee of an assignment of a bilateral contract which is wholly or partially executory on both sides, "is interpreted, in the absence of circumstances showing a contrary intention, as both an assent to become an assignee of the assignor's rights and as a promise to the assignor to assume the performance of the assignor's duties." See the comment on this section in *Langel v. Betz,* 250 NY 159, 164 NE

890. In the present case it is obvious that the assignees are claiming rights under the contract and are therefore charged with the obligations of their assignor, among which is the obligation to pay a reasonable attorney's fee in the event that it should become necessary to bring suit to enforce the provisions of the contract.

■ Defendants argue that the remedy of strict foreclosure is a harsh one and should not be applied in this case. They do not, however, suggest what relief, if any, should be granted in its stead. They do not urge that foreclosure by judicial sale would be more equitable, nor is there any evidence to that effect. The conduct of the plaintiffs has not been characterized by undue haste or harshness. They endeavored to cooperate with the defendants to enable them to sell or trade the property and recover their equity. They were forced to pay $150 a month on the mortgage which it was the obligation of the defendants to pay. It would appear that the defendants were simply unfortunate; they were unable to make a profit out of operating the property which they undertook to purchase, and so failed to live up to the terms of the contract simply because they did not have the money. That circumstance, however, does not justify a court in denying to the plaintiffs the relief to which under the law they are entitled.

By the decree the defendants were allowed 60 days after entry of the decree within which to pay all sums unpaid under the terms of the contract. They have not asked for further time. Nevertheless, as it may serve the ends of justice, the defendants will be granted 30 days from the filing of the mandate in the circuit court within which to redeem.

The decree is affirmed with costs to the plaintiffs.