John LONAS and Charlene Lonas,
Appellants,

v.

METROPOLITAN MORTGAGE AND SE-
CURITIES COMPANY, Inc., a Wash-
ington corporation, Appellee.

No. 783.

Supreme Court of Alaska.

Oct. 23, 1967.

James K. Tallman, Anchorage, for appellants.

Albert Maffei, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

DIMOND, Justice.

Ivan and Beverly Beck entered into a real estate contract to purchase certain property from Master Builders, Inc., and later assigned their "right, title and interest" in the contract to appellants. According to appellee's complaint, Master Builders, Inc. "quitclaimed and assigned all of its right, title and interest in and to said contract and in and to said property" to appellee.

Appellee brought this action to require appellants to perform the contract by making the requisite payments of the purchase price of the property and of amounts for taxes, assessments and fire insurance premiums, and to "perform all of the other terms and conditions of said contract." The court granted a summary judgment in favor of appellee, providing for the recovery of a money judgment against appellants in the sum of nearly $5,000 and ordering appellants to specifically perform the real estate contract. This appeal followed.

Appellants contend that the court erred in finding that they were indebted to appellee, because the assignment of the contract was an agreement solely between appellants and the Becks and there was no privity of contract between appellants and appellee.

With regard to contracts for the sale of land, it is the general rule that the assignee of the purchaser is not liable to the seller for the purchase price by reason of the assignment alone, and becomes liable only if he assumes that obligation in his contract with the purchaser.[1] There was such an assumption of obligation here. In the assignment from the Becks to appellants, signed by both parties, the appellants agreed with the Becks that "they will pay the balance due on said real estate contract and that the balance due thereon will become the obligation of the Assignees," and that appellants would "observe and perform all the terms, conditions, and covenants mentioned in said contract * * *." Since performance of the Becks' promise to pay the purchase price of the property would benefit someone other than the Becks, that is, the seller, and would satisfy the Becks' duty to the seller, the latter was a creditor beneficiary[2], and the appellants' promise to discharge the Becks' obligation under the

---

1. Kneberg v. H. L. Green Co., 89 F.2d 100, 103 (7th Cir. 1937); Lisenby v. Newton, 120 Cal. 571, 52 P. 813, 814 (1898); Tarpey v. Curran, 67 Cal.App. 575, 228 P. 62, 67 (1924); Boulevard Plaza Corp. v. Campbell, 254 Minn. 123, 94 N.W.2d 273, 284 (1959); Meyer v. Droegemueller, 165 Minn. 245, 206 N.W. 391, 392 (1925); Hodges v. Campbell, 211 Or. 428, 316 P.2d 312, 317 (1957); Williston, Contracts § 418A, at 109 (3d ed. 1960).

2. Restatement, Contracts § 133 (1932) provides:

   (1) Where performance of a promise in a contract will benefit a person other than the promisee, that person is, except as stated in Subsection (3):

   * * * * *

   (b) a creditor beneficiary if no purpose to make a gift appears from the terms of the promise in view of the accompanying circumstances and performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary, or a right of the beneficiary against the promisee which has been barred by the Statute of Limitations or by a discharge in bankruptcy, or which is unenforceable because of the Statute of Frauds;

   Morgan v. Argard, 148 Ga. 123, 95 S.E. 986 (1918).

contract created a duty of appellants to the seller to perform the promise.[3] As a creditor beneficiary the seller could recover judgment against either the Becks or the appellants or against each of them as to the purchaser's obligation under the contract.[4] The trial court was correct in entering judgment against appellants for the moneys due under the contract.

In addition to promising to pay the balance due under the contract and to perform all terms, conditions and covenants thereunder, appellants agreed to "save harmless and keep indemnified the said Assignors [the Becks] against all claims, demands and actions by reason of the failure of the Assignees [Appellants] to observe and perform said contract." Appellants argue that this provision makes the assignment a contract of indemnity, and required that the Becks be joined in this action as indispensable parties. In addition, appellants argue that since the indemnitees, the Becks, suffered no loss, the indemnity contract could not be sued upon.

■ The answer to appellants' contentions is that the indemnity provision in the assignment contract is not being sued upon. Nor need it be. In addition to such provision, the assignment expressly provides that the appellants shall assume the Becks' obligation to pay the moneys due under the real estate contract. In so doing appellants became liable to the seller of the property for performance of the promises in that contract. Those are the promises that were sought to be enforced in this action—not the provision as to indemnifying the Becks. As a creditor

beneficiary, the seller could recover judgment against either the Becks or the appellants. It was not necessary that the Becks be made parties to the action.

■ The real estate contract provided that:

> Time is of the essence of this contract, and in case of failure of the said purchasers to make either of the payments or perform any of the covenants on their part, this contract shall be forfeited and determined at the election of the said vendor; and the said purchasers shall forfeit all payments made by them on this contract and all rights acquired hereunder, and such payments shall be retained by the said vendor as liquidated damages, and they shall have the right to re-enter and take possession of said land and premises and every part thereof.

Appellants argue that by virtue of the foregoing the seller's only remedy under the contract was for a declaration of forfeiture, and that it was not allowed to have a money judgment or specific performance.

If the contract clearly provided that the seller's only remedy was to enforce the forfeiture provision, then the seller would be limited to that remedy.[5] But that is not what the contract provides. The forfeiture provision is not made exclusive. In such a case, the seller is entitled to pursue, in addition to the remedy specifically mentioned in the contract, any other remedy which the law affords.[6] The seller in this case was not limited to the remedy of forfeiture of the contract, but could seek judgment for moneys past due and for specific performance.

3. Id., § 136(1) (a) provides:
   a promise to discharge the promisee's duty creates a duty of the promisor to the creditor beneficiary to perform the promise.

4. Id., § 141(1) provides:
   A creditor beneficiary who has an enforceable claim against the promisee can get judgment against either the promisee or the promisor or against

each of them on their respective duties to him. Satisfaction in whole or in part of either of these duties, or of judgments thereon, satisfies to that extent the other duty or judgment.

5. Wing v. Brasher, 59 Mont. 10, 194 P. 1106, 1109 (1921).

6. J. M. Hamilton Co. v. Battson, 99 Mont. 583, 44 P.2d 1064, 1067, 101 A.L.R. 520 (1935).

■ The judgment provided that appellants "are hereby ordered to specifically perform the real estate contract \* \* \*." Appellants argue that since the seller had an adequate remedy at law, viz., the right to recover moneys due under the contract, equitable relief by way of specific performance was not available. We disagree. Specific performance of a contract for the sale of real property may be granted in favor of the seller as freely as in favor of the buyer, even though the relief actually obtained by the seller is only the recovery of money.[7]

■ Appellants also argue that the remedy of specific performance is not available because there is no privity of contract between the seller and the appellants. Again, we disagree. As a creditor beneficiary of the assignment contract between the Becks and appellants, the seller had the right to bring a suit for specific performance.[8]

Appellee obtained its interest in the property which was the subject of the real estate contract by quitclaim deed from Master Builders, Inc., which provided:

THE GRANTOR MASTER BUILDERS, INC., an Alaskan corporation, for and in consideration of One Dollar ($1.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, does by these presents grant, bargain, sell, convey, remise, release and forever quitclaim unto METROPOLITAN MORTGAGE AND SECURITIES COMPANY, INC., a Washington corp. the following described real estate \* \* \*.

AS 34.15.050 provides:

*Effect of quitclaim.* A deed of quitclaim and release for the form in common use is sufficient to pass all the real estate which the grantor can convey by a deed of bargain and sale.

Appellants contend that by virtue of the foregoing, all that appellee acquired from Master Builders, Inc. was an interest in the land, and that the quitclaim deed did not convey to appellee the right to enforce the promise to pay made by appellants' assignees.

■ A more pertinent statute is involved. AS 34.15.040(a) suggests a form of quitclaim deed substantially the same as the one used here. Subdivision (b) of that statute then provides:

A deed substantially in the form set out in (a) of this section, when otherwise duly executed, is considered a sufficient conveyance, release and quitclaim to the grantee, his heirs and assigns, in fee of *all the existing legal and equitable rights of the grantor* in the premises described in the deed. [Emphasis added.]

One of the equitable rights of the grantor, Master Builders, Inc., in the premises was the right to specifically enforce the real estate contract. Under the foregoing statute, this right was conveyed to appellee by the quitclaim deed. This is in accord with the rule that a quitclaim deed passes to the grantee all existing equities beneficial to the estate conveyed which the seller might have enforced.[9]

We find no error. The judgment is affirmed.

---

7. First Nat'l Bank v. Laperle, 117 Vt. 144, 86 A.2d 635, 641, 30 A.L.R.2d 958, 970 (1952).

8. Restatement, Contracts § 138 provides:
   If specific enforcement of a duty owed to a donee beneficiary or to a creditor beneficiary is possible and in accordance with the rules of equity, a suit for such enforcement can be maintained. The suit may be brought either by the promisee or by the beneficiary.

9. Maher v. Cleveland Union Stockyards Co., 55 Ohio App. 412, 9 N.E.2d 995, 997 (1936). Annot., 87 A.L.R. 1519 (1933).