Argued and submitted May 13, affirmed July 28, 1987

KUNZMAN et al,
*Respondents on Review,*

*v.*

THORSEN et ux,
*Petitioners on Review.*

(TC 84-12-23; CA A37661; SC S33741)

740 P2d 754

Gordon R. Hanna, Salem, argued the cause for petitioners on review. With him on the petition was Churchill, Leonard, Brown & Donaldson, Salem.

Emil Berg, Portland, argued the cause for respondents on review. With him on the response were Reif & Reif, Canby; and Hallmark, Griffith & Keating, P.C., Portland.

CAMPBELL, J.

## CAMPBELL, J.

Plaintiffs, vendors on a land sale contract, brought this action for specific performance of the contract against the vendee's assignees. The trial court granted plaintiffs' motion for summary judgment and the Court of Appeals affirmed. *Kunzman v. Thorsen*, 83 Or App 392, 732 P2d 49 (1987). We accepted review of this case to consider the circumstances under which the assignees of a vendee's interest in a land sale contract will be held to have assumed the vendee's contract obligations.

The Court of Appeals' summary of the facts reads:

"In 1977, plaintiffs sold property to David McNabb. Later in the same year, McNabb assigned 'all of [his] right, title and interest' in the property to defendants, with the approval of plaintiffs. After that date, all dealings on the contract were between plaintiffs and defendants; McNabb was no longer involved.

"After the assignment, defendants took possession of the property and exercised exclusive control over it. They alone made payments to plaintiffs under the land sale contract. They mortgaged the land to finance a barn that they had built on it. They rented out pasture, ran cattle on the property, allowed others to run cattle on it and listed it for sale. Pursuant to the terms of the contract, they paid for and received lot releases for certain parcels, which they then sold. In 1979, defendants' attorney threatened plaintiffs with legal action if they did not release deeds to certain parcels in accordance with the contract's lot release provisions.

"In 1984, defendants defaulted, paying neither the annual installment nor the property taxes, and plaintiffs accelerated the contract balance and commenced this action. Defendants contend that the trial court improperly granted summary judgment, because, as assignees of McNabb's rights under the contract, they are not, as a matter of law, obligated on the contract because they did not assume the contract."

83 Or App at 394.

The Court of Appeals, relying upon this court's opinion in *Hodges v. Servine*, 211 Or 428, 316 P2d 312 (1957), concluded that defendants had impliedly assumed the vendee's contractual duties by "claiming the benefits" of the contract. Defendants argue that their actions did not constitute a claim of contract benefits within the meaning of

*Hodges.* For the reasons set out below, we affirm.

██ ██   It is well-settled in Oregon that "[e]ither party to a contract for the sale of land generally may have specific performance of the contract." *Wittick v. Miles,* 274 Or 1, 6, 545 P2d 121 (1976).[1] A vendor's rights against the assignee of a land sale contract derive from the vendor's status as third party beneficiary to the contract of assignment between the vendee and the vendee's assignee. No independent obligation arises between the vendor and the assignee as a result of the acceptance of contract benefits. The scope of the assignment defines the scope of relief available to the vendor. In essence, the vendor's action is one for specific performance of the assignee's agreement to assume the vendee's duties. *See* 4 Corbin, Contracts 627, § 906 (1964 & Supp 1984).

The dispute in this case is over construction of the instrument of assignment. That instrument conveys to the assignees "all of the vendee's right, title and interest in and to" the land sale contract "and to the real estate described therein." The issue is whether this broad and inclusive language was intended by the parties to impose upon the assignees duties of performance under the original contract. As one treatise has stated:

> "If the words of the assignment transaction clearly purport to do nothing but transfer to the assignee the assignor's right against the third party, interpretation is simple. The same is true if the assignee's words are clearly promissory. The difficulty exists in those cases in which the parties make no clear analysis and do not differentiate in terms between rights and duties; and the assignor purports to assign the 'contract' or all of his 'right and title to the contract.' If the contract is still bilateral in character, so that the assignor has a duty to perform as well as a right to a performance by the third party, interpretation must depend chiefly upon the context and the surrounding circumstances."

*Id.* at 628-29, § 906.

In contracts for the sale of goods that ambiguity has

---

[1] The reasons for permitting the vendor of a land sale contract to obtain specific performance of the contract rather than limiting him or her to contract damages are discussed in *Johnson v. Wadsworth,* 24 Or 494, 34 P 13 (1893). *See also* 5A Corbin, Contracts 137-148, § 1145 (1964 & Supp 1984).

been resolved in favor of a presumption that the assignee has assumed the contract duties. ORS 72.2100(4) reads:

> "An assignment of 'the contract' or of 'all my rights under the contract' or an assignment in similar general terms is an assignment of rights and unless the language or the circumstances (as in an assignment for security) indicate the contrary, it is a delegation of performance of the duties of the assignor and its acceptance by the assignee constitutes a promise by the assignee to perform those duties. This promise is enforceable by either the assignor or the other party to the original contract."

The Restatement (Second) of Contracts (and its predecessor, the 1932 Restatement) adopted the same presumption as a general rule of contract construction. Restatement (Second) Contracts § 328 (1981); Restatement Contracts § 164 (1932).[2] The justification advanced for this rule is that it most probably conforms to the parties' intent and to their understanding of the meaning of such broad language of assignment. 3 Williston, Contracts 109, § 418 A (3d ed 1960); *Langel v. Betz,* 250 NY 159, 162-63, 164 NE 890 (1928). However, the Restatement (Second) includes a caveat in which the American Law Institute reserves its opinion as to whether that presumption "applies to an assignment by a purchaser of his

---

[2] Restatement Contracts § 164 (1932) reads:

"(1) Where a party to a bilateral contract which is at the time wholly or partially executory on both sides, purports to assign the whole contract, his action is interpreted, in the absence of circumstances showing a contrary intention, as an assignment of assignor's rights under the contract and a delegation of the assignor's duties.

"(2) Acceptance by the assignee of such an assignment is interpreted, in the absence of circumstances showing a contrary intention, as both an assent to become an assignee of the assignor's rights and as a promise to the assignor to assume the performance of the assignor's duties."

Restatement (Second) Contracts § 328 (1981) reads:

"(1) Unless the language or the circumstances indicate the contrary, as in an assignment for security, an assignment of 'the contract' or of 'all my rights under the contract' or an assignment in similar general terms is an assignment of the assignor's rights and a delegation of his unperformed duties under the contract.

"(2) Unless the language or the circumstances indicate the contrary, the acceptance by an assignee of such an assignment operates as a promise to the assignor to perform the assignor's unperformed duties, and the obligor of the assigned rights is an intended beneficiary of the promise.

"*Caveat:* The Institute expresses no opinion as to whether the rule stated in Subsection (2) applies to an assignment by a purchaser of his rights under a contract for the sale of land."

rights under a contract for the sale of land." Restatement (Second) Contracts § 328 (1981). The Institute explains this reticence in a comment:

"When the purchaser under a land contract assigns his rights, the assignment has commonly been treated like a sale of land 'subject to' a mortgage. In this view acceptance of the assignment does not amount to an assumption of the assignor's duties unless the contract of assignment so provides either expressly or by implication. * * * Decisions refusing to infer an assumption of duties by the assignee have been influenced by doctrinal difficulties in the recognition of rights of assignees and beneficiaries. Those difficulties have now been overcome, and it is doubtful whether adherence to such decisions carries out the probable intent of the parties in the usual case. But since the shift in doctrine has not yet produced any definite changes in the body of decisions, the Institute expresses no opinion on the application of Subsection (2) to an assignment by a purchaser under a land contract."

Restatement (Second) Contracts § 328, *comment c* at 46 (1981).

In *Hodges v. Servine, supra,* this court stated the rule of interpretation for use in such cases. The vendee under a land sale contract had assigned the contract to defendants, who took possession of the property and began making payments to plaintiffs. Defendants eventually fell behind in their payments, and the vendors brought an action for strict foreclosure. Defendants answered that plaintiffs had waived strict performance of the payment terms of the contract, breached the contract and repudiated and rescinded the contract. Defendants claimed a lien for the amount of payments received by plaintiffs under the contract and for the value of permanent improvements defendants made on the property. This court affirmed the trial court's judgment for plaintiffs. Among the issues this court addressed was whether defendants were bound by a provision in the contract authorizing attorney fees in the event of a foreclosure. This court concluded:

"By its decree the court allowed the plaintiffs an attorney's fee in the sum of $500. A provision of the contract authorized such an allowance, but defendants say that this provision is not binding on them because they did not assume the obligations of the contract but merely accepted a bare assignment. The general rule is that the assignee of a contract

for the purchase of land or other property assumes no liability to the vendor by reason of the assignment alone. *Urban v. Phy,* [24 F2d 494 (9th Cir 1928)]; *Coos Bay Wagon Co. v. Crocker,* [4 F 577, 587 (C C Or 1880)]. But 'Where the assignee claims the benefits of the contract he becomes subject to its burdens as fully and to the same extent as though he were the original party to the contract.' 92 CJS 199, Vendor and Purchaser § 311. Without expressing our approval, we take note of the fact that the Restatement of the Law of Contracts, § 164, provides that acceptance by the assignee of an assignment of a bilateral contract which is wholly or partially executory on both sides, 'is interpreted, in the absence of circumstances showing a contrary intention, as both an assent to become an assignee of the assignor's rights and as a promise to the assignor to assume the performance of the assignor's duties.' See the comment on this section in *Langel v. Betz,* 250 NY 159, 164 NE 890 [(1928)]. In the present case it is obvious that the assignees are claiming rights under the contract and are therefore charged with the obligations of their assignor, among which is the obligation to pay a reasonable attorney's fee in the event that it should become necessary to bring suit to enforce the provisions of the contract."

*Hodges v. Servine, supra,* 211 Or at 437-38.

In the instant case the Court of Appeals concluded from this passage that "an assignee may become liable under a contract by engaging in conduct that indicates that he has assumed it." 83 Or App at 394. The court scrutinized defendants' conduct and concluded:

"The assignees' conduct * * * indicates that they had assumed the contract obligations as well as the rights rising from it. It is undisputed that defendants, in addition to possessing and paying for the property, also demanded and received lot releases pursuant to the contract provisions. Their attorney also threatened to use the courts to enforce the 'Kunzman to Thorsen' contract. We hold that the undisputed facts, as a matter of law, establish that defendants became assuming assignees and are obligated on the contract."

83 Or App at 395.

Defendants argue that their actions did not constitute a claim of the contract's benefits within the meaning of *Hodges,* an argument made possible by the fact that the *Hodges* court did not specify which of the assignees' acts constituted a claim of benefits. Defendants contend that an

assignee should be held to have claimed the benefits (and so to have assumed the duties) of a contract only when the assignee has resorted to the courts for relief under the contract. The Court of Appeals disagreed, stating that "[a]lthough bringing an action to enforce a contract is one way to claim its benefits, that is not the exclusive means by which an assignee may become liable." *Id.* Defendants point to the *Hodges* assignees' claim for rescission and to the citation in *Hodges* of the New York case of *Langel v. Betz, supra,* as support for their contention. Our reading of *Langel,* our consideration of the purposes to which it was put by the *Hodges* court and our examination of the other cases in which this court has considered the assumption of contract duties by an assignee on the ground that the assignee accepted the benefits of the contract lead us to agree with the Court of Appeals.

In *Langel v. Betz, supra,* the assignee of a land sale contract requested of the vendors an extension of the date for performance of the contract in order to allow the title company to complete its search and report on the title to the property. The vendors granted this request. However, upon the arrival of the new date for performance, the assignee did not appear. The vendors sought specific performance of the contract against the assignee, arguing that the assignee's request for an extension was an act sufficient to constitute an assumption of the contractual duties. The court recognized that "[t]he assignee may * * * expressly or impliedly, bind himself to perform the assignor's duties," and noted that under its previous decisions "where the assignee of the vendee invokes the aid of a court of equity in an action for specific performance, he impliedly binds himself to perform on his part," but that the converse of this rule, "that the assignee of the vendee would be bound when the vendor began the action," did not follow from those decisions. 250 NY at 162.

The *Langel* court next discussed and rejected the rule of the first Restatement presuming assumption by the assignee, and it is for this discussion that *Hodges* cites the case. The *Langel* court stated:

> "The proposed change is a complete reversal of our present rule of interpretation as to the probable intention of the parties. It is, perhaps, more in harmony with modern ideas of contractual relations than is 'the archaic view of a contract as creating a strictly personal obligation between the creditor

and debtor' (Pollock on Contracts [9th ed.], 232), which prohibited the assignee from suing at law in his own name and which denied a remedy to third party beneficiaries. 'The fountains out of which these resolutions issue' have been broken up if not destroyed (*Seaver v. Ransom*, 224 N.Y. 233, 237), but the law remains that no promise of the assignee to assume the assignor's duties is to be inferred from the acceptance of an assignment of a bilateral contract, in the absence of circumstances surrounding the assignment itself which indicate a contrary intention."

250 NY at 163-64. The court last concluded that because the assignee's request for an extension was not clearly "an assertion of a right" to the extension, the court would reserve consideration of the question of whether a "demand for performance by the vendee's assignee creates a right in the complaining vendor to enforce the contract against him." 250 NY at 165.

*Hodges* cites *Betz* not for its tangential reference to the rule of implied assumption where the assignee has sued on the contract, but for its criticism of the Restatement.[3] This court joined the New York court in rejecting the Restatement rule and requiring some objective manifestation of intent to be bound where the words of assignment are ambiguous. However, while the New York court declined to consider whether an assertion of a right under the contract might constitute such manifestation, this court held in *Hodges* that a claim of the contract benefits creates a presumption that the assignee assumed the contract obligations.

As we read the opinion in *Hodges,* the court was impressed less with the fact that the assignees sought restitution for their expenditures than with the fact that the assignees took possession of the land and made payments directly to the vendors, behaving generally as if they were party to the original contract. This interpretation of *Hodges* is supported by the only other cases in which this court has determined that acceptance of contract benefits imposed liability upon a contract assignee.

---

[3] We note, too, that the claims asserted by the assignees in *Hodges* for recovery of monies paid and improvements made were not dependent upon the existence of the contract and so were not claims of the "benefits of the contract." *See Kneberg v. H.L. Green Co.,* 89 F2d 100, 104 (7th Cir 1937).

In *Oregon & Western Colonization Co. v. Strang,* 123 Or 377, 260 P 1002 (1927), this court considered the issue of whether the assignee of a land sale contract was bound by a provision requiring the vendee to "pay all taxes that may be hereafter levied" on the property. The court stated:

"Plaintiff claims that defendant Davison, having accepted the assignment of the contract between it and defendant Strang and that contract having provided that vendee Strang should pay the taxes, is bound thereby; *he cannot accept the benefits of said contract without also becoming liable for the obligations.* Plaintiff also claims that the covenant to pay the taxes is a convenant which runs with the land; that defendant Davison having accepted the assignment of contract to purchase said land steps in the place and stead of defendant Strang and is liable to plaintiff to the same extent as his assignor Strang was and is. We think that plaintiff's positions are correct. While the authorities are not uniform we believe that both in reason and by weight of the authorities *defendant Davison became personally liable for the payment of the taxes when he accepted an assignment of the contract, signed the notes given by his assignor Strang to plaintiff and entered into the possession of the land: Corvallis & Alsea R.R. Co. v. Portland E. & E. Ry. Co.,* [84 Or 524, 534, 163 P 1173 (1917)]; *Windle v. Hughes,* [40 Or 1, 5, 65 P 1058 (1901)]. * * *

"It is our opinion that the covenant to pay the taxes, which is a part of the contract under which defendant Davison was in possession of the land and enjoyed the benefits thereof, runs with the land: 15 C.J. 1253, § 71."

123 Or at 382-83 (emphasis added).

In *Miller v. Fernley,* 280 Or 333, 337, 570 P2d 1178 (1977), this court cited *Hodges* in holding that an assignee who sold his assigned interest under a separate land sale contract, received payments from his vendee and later defaulted on the payments under the original contract had "assumed the burden of [an attorney fees] provision [in the original contract] since he accepted the benefits of the contract." Because no mention is made of the assertion by the assignee of any claim or counterclaim, it is clear that the court considered the assignee's sale of his interest and his receipt of payments an acceptance of benefits, just as it is clear that the *Strang* court considered the possession of and right to sell the land the "benefits" of the contract.

■■ From this mash of precedent we distill the following principle: An assignee "claims the benefits" of a land sale contract when he or she exercises the rights in the contract's subject matter conferred upon the vendee by the contract. Where a party accepts a broadly worded assignment of a land sale contract, "steps into the shoes" of the assignor and asserts the interests the contract conveys, the presumption arises that the assignee intended also to assume the duties the contract imposes.

Defendants aver that "every assignee, even assignees for security purposes, 'claim the benefits' of contracts assigned to them," and they express concern that the Court of Appeals' decision consequently renders every contract assignee liable for performance of the contract assigned. This concern is unfounded.

Accepting the benefits of a contract does not *impose* liability on an assignee. The *Hodges* rule is a rule of construction only. It considers the probable intent of the parties at the time the assignment was made for the purpose of determining whether expansive words of the assignment imply an assumption of duties by the assignee. Where the parties clearly intend otherwise (as evinced either by the terms of the assignment or by the surrounding circumstances, *e.g.,* an assignment for security), the implication that the assignee assumed the vendor's contractual duties is dispelled.

Defendants further contend that vendees under land sale contracts will be unable to assign their interests in land as freely as mortgagors or grantors of trust deeds, pointing out that holders of those interests can assign their interests in the land "subject to" the mortgage or trust deed. Of course, nothing prevents the parties to an assignment of a vendee's interest in a land sale contract from including such a provision or otherwise limiting the assignee's exposure in the instrument of assignment.

The rule developed in *Hodges, Fernley* and *Strang* is closer to that of the Restatement and the UCC than it is to the probable majority rule on this issue. However, we are not persuaded that a more rigorous test than that adopted in this court's previous decisions is needed to safeguard the interests of the parties to a land sale contract or to its subsequent assignment.

Defendants argue that this case was not appropriately decided by summary judgment because defendants introduced to the trial court "evidence of language and circumstances fairly suggesting an intention not to assume" the contract. Our scrutiny of the affidavit and exhibits introduced by defendants in opposition to plaintiffs' motion reveals no such evidence. Defendants deny having expressly assumed or agreed to assume the contract duties, argue that their situation in this matter was such that they would not have wanted to assume the duties, and maintain that the relative bargaining positions of the parties were such that plaintiffs could have required an express assumption of duties but that the assignor could not. There is no indication that defendants sought affirmatively to disclaim the contract duties or that the understanding of the parties was anything other than that the assignment would affect a delegation and assumption of duties. We agree with the trial judge that this "evidence" was insufficient as a matter of law to dispel the presumption arising from the language of the assignment and the actions of the parties. Even viewed in the light most favorable to the non-moving party, defendants' submissions to the trial court created no "genuine issue as to any material fact." ORCP 47C. *See Seeborg v. General Motors Corporation,* 284 Or 695, 588 P2d 1100 (1978).

In this case the trial court and the Court of Appeals properly construed defendants' acts as a claim of the benefits of the land sale contract. The trial court properly concluded that defendants had assumed the duties created by the contract and that summary judgment in favor of plaintiffs was appropriate. We affirm.