Argued June 7, affirmed July 15, petition for rehearing
denied September 28, 1971

STINEMEYER ET UX, *Appellants, v.*
WESCO FARMS, INC. ET AL, *Respondents.*
487 P2d 65

*F. P. Stager,* Salem, argued the cause and filed briefs for appellants.

*L. Charles Purvis,* Toledo, argued the cause for respondents. On the brief were MacPherson, Osterlund & Purvis.

McALLISTER, J.

This is a suit for the strict foreclosure of a land sale contract. The basic question is whether the acceptance by the vendor of late payments precludes him from declaring the entire balance due and filing suit for strict foreclosure without first giving purchasers a reasonable time to cure any defaults. The lower court dismissed the suit and plaintiff appeals. We affirm.

There is little dispute about the facts. On May

14, 1969, F. H. and Betty Haugland, as vendors, contracted to sell the Starfish Cove Motel in Lincoln County to defendant Wesco Farms, Inc. The selling price was $97,500 of which $10,000 was paid in cash, $5,000 in property, and $26,567.96 by the assumption of a mortgage on the motel held by Hollis and Isabel Evans.

The balance of the purchase price bore interest at seven per cent from July 15, 1969, and Wesco was required for the first year to pay only this interest in monthly instalments commencing August 15, 1969. Time was made of the essence of the contract. We are concerned here only with delay in the monthly interest payments of $326.26 each and are not concerned with the larger monthly payments required commencing August 15, 1970.

On July 15, 1969, Wesco contracted to sell the motel and a major portion of the real property which it was buying from the Hauglands to the defendant Ocean Eleven, Inc.

On November 20, 1969, the Hauglands assigned all their interest in the May 14, 1969, contract to the plaintiff Frank G. Stinemeyer, to whom we will refer herein as if he were the sole plaintiff.

On March 18, 1970, Stinemeyer, by letter to Wesco, declared the entire balance of the purchase price due and payable and also instructed National Security Bank of Newport, as the escrow agent of the parties, not to accept any further payment less than the entire balance of the contract.

On April 6, 1970, plaintiff filed this suit in Lincoln County praying for strict foreclosure of the contract.

Plaintiff's letter of March 18, 1970, declaring

the full balance of the purchase price due and payable recited that Wesco was in default (1) in payment of the monthly instalments of interest, (2) in payment of the 1969-1970 real property taxes in the sum of $707.55, and (3) in assigning an interest in the contract to Ocean Eleven, Inc., without consent of the vendors. The complaint in this suit alleged the same three defaults.

On July 27, 1970, Wesco filed an amended answer in which it tendered into court $2,662.03 in payment of all monthly instalments of interest due under the contract, the balance of $104.47 due on the 1969-1970 taxes and $600 to apply on plaintiff's estimated attorney fees and costs in bringing the suit for strict foreclosure.

The suit was tried on July 28, 1970, and the trial court entered a decree dismissing the suit and directing that the sum tendered into court by Wesco be paid to plaintiff and applied by him as follows:

(1) $104.47 on the taxes;
(2) $1,957.56 in full payment of the interest due to and including July 15, 1970;
(3) $400 on the August 15, 1970 payment due on the contract;
(4) $200 toward the September 15, 1970, contract payment.

Defendants were awarded costs and disbursements in the trial court.

■ Two of the alleged defaults are quickly disposed of. The evidence preponderates that the Hauglands, before they assigned the contract to plaintiff, had consented to the sale by Wesco to Ocean Eleven and of course that consent is binding on plaintiff. As to the taxes, the contract required that they be paid,

not when due, but before they were delinquent. The 1969-1970 taxes were not delinquent in March 1970.[1]

As to the monthly instalments of interest, the evidence shows the following payment record:

| Date due | Date paid |
|---|---|
| August 15, 1969 | August 20, 1969 |
| September 15, 1969 ) | |
| October 15, 1969 ) | November 21, 1969 |
| November 15, 1969 ) | |
| December 15, 1969 | Paid late |
| January 15, 1970 | Paid late |
| February 15, 1970 ) | Still unpaid on |
| March 15, 1970 ) | March 18, 1970 |

It will be noted that on November 20, 1969, the date of the assignment to plaintiff, Wesco was in default in three payments. After the assignment those three payments were made in a lump sum, and the next two monthly payments were made late and accepted by plaintiff. On March 18, 1970, when plaintiff declared the full balance due and payable, the February

---

[1] ORS 311.510. In Portland Terminal Co. v. Porter Ind. Co., 133 Or 205, 289 P 1048 (1930) we construed a land sale contract which contained a covenant that when the purchaser should become entitled to the deed there would be no delinquent taxes against the land. When the deed was delivered taxes were due and unpaid, but had not yet become "delinquent" according to the provisions of the statute then in force. We held that by "delinquent taxes," the parties meant taxes which had become a lien against the property. In reaching that conclusion, however, the contract was construed together with the deed, which was executed simultaneously with the contract, and which warranted a conveyance "free from all incumbrances." The opinion indicates that without this additional indication of the parties' intent, the word "delinquent" would have been construed to mean delinquent under the statute. 133 Or at 210.

In the present case, the contract contains no general covenant to keep the property free from all encumbrances, nor is there any other language to indicate that the parties gave their own, rather than the statutory, meaning to the word "delinquent."

instalment of $326.26 was slightly more than one month overdue and the March instalment was three days delinquent.

■ Wesco argues that by accepting late payments over a period of time, plaintiff had waived the contract provision making time of the essence, and that Wesco was therefore entitled to notice of plaintiff's intention to require strict performance as well as an opportunity to make up the delinquent payments before plaintiff could accelerate the debt and bring this suit. The cases which Wesco cites for this proposition involved attempts by vendors to declare a forfeiture, which is a remedy completely foreign to the remedy of foreclosure by a suit in equity.[2] The rule contended for apparently has been applied by this court only in forfeiture cases. See, e.g., *Grider v. Turnbow*, 162 Or 622, 641, 94 P2d 285 (1939); *Rynhart v. Welch*, 156 Or 48, 53, 65 P2d 1420 (1937); *Johnson et al v. Berns et al*, 111 Or 165, 172-173, 209 P 94, 224 P 624, 225 P 727 (1924). We have suggested however in some of our cases that a foreclosure suit would be premature if brought without notice after the "time of the essence" clause had been waived and that the purchaser might have such a premature suit abated or dismissed. *Morrison et al v. Kandler et ux*, 215 Or 489, 502, 334 P2d 459 (1959); *Hodges et ux v. Servine et ux*, 211 Or 428, 432-433, 316 P2d 312 (1957); *Zumstein v. Stockton et ux*, 199 Or 633, 643, 264 P2d 455 (1953); *Grider v. Turnbow*, supra, 162 Or at 643.

In *Blondell v. Beam*, 243 Or 293, 295, 413 P2d 397 (1966), which held that there was no evidence of a waiver, the court assumed that a prior waiver of the

___

[2] Nygaard et ux v. Anderson, 229 Or 323, 330-331, 366 P2d 899 (1961).

clause making time of the essence would have constituted a good defense to a suit for strict foreclosure; in that case the defendant had tendered the amount past due into court.

Although there are cases to the contrary,[9] a number of courts have held that a creditor who has, by his past actions, led his debtor to believe that the terms of their agreement requiring prompt payment will not be strictly enforced must, before taking advantage of an acceleration option, give the debtor a reasonable opportunity to make up his delinquent payments. *Kummli v. Myers,* 400 F2d 774 (DC Cir 1968); *Ashback v. Wenzel,* 141 Colo 35, 346 P2d 295, 297 (1959); *Jaudon v. Equitable Life Assur. Soc.,* 102 Fla 782, 136 So 517, 520-521 (1931); *Smith v. Gholstin,* 45 Ga App 287, 164 SE 217, 218 (1932); *Edwards v. Smith,* 322 SW2d 770, 775-776 (Mo 1959); see, also, *Brown v. Hewitt,* 143 SW2d 223, 227 (Tex Civ App 1940).

■ We hold that this general rule, which we have applied in cases involving attempted forfeitures, is applicable as well when the vendor is seeking to foreclose a land sale contract. If the facts warrant the application of the rule, the purchaser may, upon the vendor's bringing a foreclosure suit, either file a plea in abatement, asking for a reasonable time in which to make up the delinquent payments, or tender into court the amounts past due. If by either method he brings his payments up to date within a reasonable time the suit should be dismissed; otherwise it may proceed. See *Grider v. Turnbow,* supra, 162 Or at 643-644.

■ It has been our policy to encourage sellers of land to enforce their contracts in equity when the

---

[9] See cases cited in Annotation, 97 ALR2d 997, 1008-1010.

purchaser has defaulted in his performance. *Kincaid v. Fitzwater,* 257 Or 170, 474 P2d 742 (1970); *Blondell v. Beam,* supra. Our holding in this case is not inconsistent with that policy. The vendor who has, by a practice of accepting late payments, permitted the purchaser to rely on this course of conduct, need only give reasonable notice that thereafter he will insist on strict performance of the contract. Further defaults would entitle him to his foreclosure remedy.

■ Plaintiff contends that the defense of "waiver" cannot be relied on by defendants because they did not plead it. The principle underlying the rule we have been discussing is variously referred to in the cases as "waiver," "estoppel," or the inference of a new "quasi-agreement." This court has suggested that while the cases often speak of a waiver, estoppel would be a more correct term. *County of Lincoln v. Fischer et al,* 216 Or 421, 452, 339 P2d 1084 (1959). As a general rule one who relies on estoppel must include the underlying facts in his pleading. *Cody v. Ins. Co. of Oregon,* 253 Or 587, 592, 454 P2d 859 (1969); *Reed v. Commercial Ins. Co.,* 248 Or 152, 154, 432 P2d 691 (1967); *McCleery v. Woodmen of the World,* 136 Or 407, 415, 297 P 345, 299 P 1004 (1931). We think, however, that plaintiff is in no position to insist on that rule in this case.

The issue was raised at trial, without objection, when plaintiff was questioned about his acceptance of late payments, and was argued in the trial court by defendants' counsel. Plaintiff did not object that this issue was outside the scope of the pleadings. It appears that plaintiff was not prejudiced by the introduction of this issue into the case, since he has apparently produced all of his communications with Wesco which are in the nature of notices and demands.

Under these circumstances, plaintiff may not for the first time on appeal claim that the issue was not properly raised by the pleadings. *Aclin v. Caplener,* 229 Ark 718, 318 SW2d 141 (1958); *Robison v. Hanley,* 136 Cal App 2d 820, 289 P2d 560 (1955); *Woodard v. Carpenter,* 31 Wash 2d 271, 195 P2d 983, 985 (1948). And see Annotation, 120 ALR 8, 87-91, discussing the cases which "make still another exception to the general rule and hold that if the estoppel or waiver is admitted in evidence or becomes an issue without objection at the time that it was not pleaded, this objection is waived, * * *."

The evidence clearly shows that plaintiff's behavior gave Wesco the right to expect that late payments would be accepted. Plaintiff wrote Wesco a letter on March 3, 1970, reading as follows:

"I am concerned with the repeated delay in payments to the undersigned under the captioned escrowed contract.

"I have been advised by the Hauglands that the remittance has not been made to them, and that they have on several occasions given explicit instructions that the payments, in accordance with the terms of Assignment executed by each of you, were to be made to the undersigned at the above address.

"I am hopeful that the past due February payment and future monthly payments will be made without the delays I have thus far experienced. I feel that it is reasonable that additional interest should be assessed on all past due payments. It appears to me that the scheduled deferment to the 15th of each month should be more than sufficient time past the beginning of the month to afford the obligors an opportunity to deposit the payments with the escrowee. I will expect additional interest to be paid on all payments not made by the end of

the month in which payments accrue (on the 15th thereof).

"I trust that it will not be necessary that I take further action to enforce payment.

"Very truly yours,
/s/ FRANK G. STINEMEYER"

The above letter is, in effect, a declaration by plaintiff that he will accept monthly payments without penalty if paid before the end of the month in which they fall due and will accept payments after the month in which they fall due if they include "additional interest."

By his inaction in the face of prior late payments, and by the position he took in the letter of March 3, plaintiff indicated that he would not insist upon timely payments of the instalments due under the contract. It would be inequitable to permit the acceleration of the entire contract balance and a foreclosure based on that acceleration without first requiring that Wesco be given an opportunity to bring its payments up to date. Wesco, by its tender into court, cured all existing delinquencies, and plaintiff was entitled to no more. The trial court properly dismissed the suit.

The decree of the trial court is affirmed.