Argued August 31, reversed and remanded
with instructions
October 22, 1979

CRISP, et ux,
*Appellants,*

*v.*

HILL,
*Respondent.*

(No. A7704-06001, CA 11614)

601 P2d 814

Scott C. Wyse, Portland, argued the cause for appellants. With him on the briefs was Newcomb, Sabin, Meyer & Schwartz, Portland.

John A. McCormick, Albany, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Buttler and Roberts, Judges.

SCHWAB, C. J.

**SCHWAB, C. J.**

In this suit for foreclosure of a land sale contract, we conclude that the seller had no duty to procure fire insurance and that the seller did not waive the buyer's failure to make timely payments. We therefore reverse the trial court's holdings to the contrary.

In 1970, defendant, as buyer, and Liebert, as seller, entered into a land sale contract by which defendant agreed to purchase a house and lot. Initially, Liebert procured fire insurance covering the house. From 1970 to 1974 Liebert paid the insurance premiums from defendant's reserve account, *i.e.*, a portion of defendant's monthly payment that he set aside for payment of insurance and property taxes.

There is no evidence about the amount of insurance in effect from 1970 to 1974 nor any evidence of the beneficiary. Neither is there any cogent evidence about why the prior arrangement was altered in February, 1975, when defendant procured a fire insurance policy. Liebert obtained or was furnished a copy of that policy.

In October, 1975, Liebert assigned his interest in the land sale contract to plaintiffs. At that time Liebert gave plaintiffs his copy of the February, 1975, fire insurance policy that had been procured by defendant.

In early 1976, plaintiffs received a notice from the insurance company that a premium payment was due on defendant's February, 1975, fire insurance policy and paid it, apparently following the same "reserve account" practice Liebert had initiated.

After the contract was assigned to plaintiffs, defendant repeatedly failed to make the required monthly payments. Plaintiffs sent—or had their attorneys send—notices to defendant, on May 18, 1976, and November 16, 1976, of intent to foreclose if the payments were not brought up to date and made promptly in the future. Defendant continued to fail to make the monthly payments required by the contract.

[633]

In February, 1977, defendant's insurance company canceled her policy because of excessive claims. Defendant was notified of the cancellation by letter and by a telephone call from her insurance agent. Neither defendant nor her insurance company notified plaintiffs that her policy had been canceled.

In April, 1977, a fire occurred in the house causing substantial damage. There was no fire insurance in effect at the time of the fire because defendant's policy had been canceled, she had not procured a new one and plaintiffs had never procured any insurance.

Plaintiffs then filed this suit for foreclosure, contending defendant was in default in failing to make the required monthly payments. By way of affirmative defenses and a counterclaim, defendant alleged that plaintiffs had the duty to procure and maintain fire insurance and had waived any right to require timely, full payments by accepting tardy and partial payments.

Insurance is mentioned twice in the land sale contract:

"[1] * * * The buyer agrees that at all times * * * at buyer's expense, he will insure and keep insured all buildings now or hereafter erected on said premises against loss or damage by fire (with extended coverage) in an amount not less than $_____ in a company or companies satisfactory to the seller, with loss payable first to the seller and then to the buyer as their respective interests may appear and all policies of insurance to be delivered to the seller as soon as insured. Now if the buyer shall fail to * * * pay for such insurance, the seller may do so and any payments so made shall be added to and become a part of the debt secured by this contract and shall bear interest at the rate aforesaid, without waiver, however, of any right arising to the seller for buyer's breach of contract.[1]

---

[1] The space on the printed contract form where the amount of insurance should have been filled in is blank.

"[2] * * * [T]he buyer agrees to pay the remainder of said purchase price (to-wit: $8,500.00) to the order of the seller in monthly payments of not less than $100.00 - (one hundred) Dollars ($100.00) each, includes taxes and insurance, payable on the 1st day of each month hereafter beginning with the month of February, 1970, and continuing until such purchase price is fully paid."

Defendant contends, and the trial court apparently found, that the reference to the buyer's monthly payments including insurance proves it was the parties' intent that the seller be responsible to procure and maintain fire insurance. We disagree.

The first quoted provision unequivocally places the duty to procure and maintain fire insurance on the buyer. Assuming the second quoted provision—that the buyer's monthly payments include "taxes and insurance'—suggests fire insurance is instead the seller's responsibility, we must attempt to construe the contract to give effect to both provisions. *New Zealand Ins. v. Griffith Rubber*, 270 Or 71, 75, 526 P2d 567 (1974); *Johnson v. Homestead-Iron Dyke Mines Co.*, 98 Or 318, 329, 193 P 1036 (1920).

■ It is easy to give effect to both provisions by recognizing the distinction between the duty to procure insurance and the duty to pay insurance premiums when due. The first quoted provision attempts to place the duty to procure insurance and the duty to pay premiums on the buyer; but if the buyer "shall fail to * * * pay for such insurance, the seller may do so," *i.e.*, the seller *may* assume the duty to pay. Thus, the second quoted provision's reference to the buyer's monthly payments including insurance only applies *if* the seller assumes the duty to *pay* for insurance. It does not, in any event, obligate the seller to *procure* insurance.

Nothing in the parties' course of performance offers any persuasive reason for a contrary construction. Although the original seller, Liebert, initially procured fire insurance, there is no explanation in the

[635]

record about why he did so. There is a hint that he may have done so to protect the mortgage amount he owed on the house. Liebert was defendant's accountant; and there is a slightly stronger hint in the record that he may have initially procured insurance as a favor or service for defendant. Defendant later procured her own fire insurance policy and maintained it for two years. When asked why she obtained that policy, defendant testified, "Why I applied for it because of my contract and things." This policy was in effect, and a copy was given to plaintiffs when they took the assignment of Liebert's interest in the land sale contract. Defendant testified that after this policy was canceled: "I tried to reinstate myself someplace else and then they wouldn't accept me * * *." Neither Liebert nor defendant ever told plaintiffs they believed it was plaintiff's responsibility to procure insurance.

For all these reasons, we conclude that plaintiffs were under no duty to procure fire insurance.

■ Turning to the waiver issue, defendant does not dispute that she has failed to make the monthly payments required by the contract; she only contends that plaintiffs waived the right to insist on timely and full payments by accepting tardy and partial payments. In *Stinemeyer v. Wesco Farms, Inc.*, 260 Or. 109, 116, 487 P2d 65 (1971), the Supreme Court held:

> "* * * The vendor who has, by a practice of accepting late payments, permitted the purchaser to rely on this course of conduct, need only give reasonable notice that thereafter he will insist on strict performance of the contract. Further defaults would entitle him to his foreclosure remedy."

A May 18, 1976, letter from plaintiffs' attorney to defendant recited the then current arrearage and stated:

> "* * * Mr. Crisp feels that up to this point he has been more than reasonable in going along with your continual late payments. Mr. Crisp does not feel he can continue in this manner.

"* * * if any payment for any month thereafter [*i.e.*, after May 25, 1976] is not made on or before the 25th of such month, Mr. Crisp will immediately pursue his legal remedies without further notice to you."

Defendant continued to fail to make the payments required by the contract, and on November 16, 1976, Mr. Crisp wrote directly to defendant, stating the then current arrearage and concluding:

"* * * I will plan on foreclosing the first part of next year unless you get it brought up to date. I trust in the meantime you will make provision for keeping it up to date or get the contract refinanced."

This letter produced some results—defendant made the required monthly payment in December 1976. She did not make the required monthly payments in January, February or March, 1977. This foreclosure proceeding was filed in April, 1977.

We conclude that plaintiffs gave reasonable notice that they would insist on strict performance of the contract, *Stinemeyer v. Wesco Farms, Inc., supra*, and find defendant's argument that there was nevertheless a waiver of her continued defaults not persuasive. Plaintiffs are entitled to foreclosure in some form. *Blondell v. Beam*, 243 Or 293, 413 P2d 397 (1966). In their brief plaintiffs pray that the trial court be directed to enter a decree "requiring Defendant to pay the full balance due under the Contract within a reasonable time to be fixed by the [trial] court, or in default thereof to have her interest in the Property terminated by strict foreclosure." We direct that the trial court conduct such further proceedings as may be necessary to fix a reasonable time, and then to enter a decree as requested by plaintiffs.

Reversed and remanded with instructions.