BOEHNLEIN, aka Trebelhorn,
*Respondent,*
*v.*
ANSCO, INC.,
*Appellant.*

(No. A8010-05993, CA A22024)

657 P2d 702

Gary M. Bullock, Portland, argued the cause and filed the briefs for appellant.

Gerald R. Pullen, Portland, filed the brief for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

**WARREN, J.**

Defendant appeals from a decree quieting title to a parcel of real property in plaintiff, a judgment awarding plaintiff damages for slander of the title and general findings that defendant failed to prove its counterclaims for specific performance of an earnest money contract. We affirm.

This action arose out of plaintiff's attempts to sell and defendant's attempts to buy Portland real property known as 11120 N.E. Prescott. In late March, 1980, the parties entered into an earnest money contract for the sale of the property. It provided that time was of the essence and that closing was to occur in escrow on or before June 20, 1980. Defendant agreed to pay $20,000 of the $42,000 purchase price at closing.[1]

Neither party performed by June 20, 1980. On June 27, 1980, plaintiff deposited in escrow a warranty deed, the earnest money contract and escrow instructions to close the transaction in accordance with the contract. On July 11 and July 17, 1980, plaintiff's agent called defendant's president to discuss closing. The agent expressed plaintiff's desire to close quickly, because plaintiff was obligated to make a $8500 payment on what we assume to be an unrelated land sale contract. Defendant's president stated that he also wanted to close quickly and that he would obtain the financing necessary to make the down payment in a week.

On July 18, 1980, plaintiff's agent wrote a letter to defendant stating that defendant's failure to close had caused plaintiff to lose rents from the property and to become liable for additional property taxes and had required her to secure an $8000 loan to pay her contract obligation. The letter also discussed the July 17 conversation between plaintiff's agent and defendant's president:

"On July 17, 1980, after telephoning [plaintiff], I told you she did not feel she was obligated to wait any longer.

---

[1] The contract also provided that defendant had a maximum of 90 days from the day defendant accepted plaintiff's counteroffer to obtain financing. The contract does not show, and the parties dispute, the date of defendant's acceptance. If defendant accepted after March 22, 1980, the 90-day period would end after June 20, 1980. Nevertheless, the parties agree that the contract required them to close on or before June 20, 1980.

In a final attempt to resolve this matter, however, she would give you until July 23, 1980 to close. You could also purchase an option, for $2,000, to hold the property until August 1, 1980. If you failed to close the $2,000 would be forfeited. If you did close by then, the $2,000 would be applied to the down payment. You indicated you did not wish to purchase the option until at least July 23, 1980, since you would have to take the money out of the bank and lose interest."

The letter then discussed the alternatives open to defendant:

"You are hereby notified that if you have not closed this sale by 5:00 PM, Wednesday, July 23, 1980, [plaintiff], without further notice to you, will declare the sale to you null and void. She will revoke her escrow instructions and immediately demand the return of all documents, and immediately attempt to sell the property to any other qualified buyer who meets her terms.

"You are welcome to contact me regarding a possible option, or any other proposal, but other than your right to close before 5:00 PM, Wednesday, July 23, 1980, absolutely no promises are being made to you."

On July 24, 1980, after receiving no response to the letter, plaintiff's agent withdrew plaintiff's papers from escrow. On July 25, 1980, defendant deposited in escrow a $2000 check and a letter containing escrow instructions. Defendant tendered the $2000 as a "gesture of good faith," offered to pay plaintiff's interest on the $8000 loan, and proposed to close the transaction within 30 business days. Plaintiff did not respond to this letter. On August 6, 1980, defendant recorded the earnest money contract.

Plaintiff brought a suit to quiet title and an action for slander of title. Defendant counterclaimed for specific performance based on three theories: plaintiff breached the earnest money contract; plaintiff breached the earnest money contract as modified by defendant's July 25, 1980, letter; and plaintiff's failure to respond to defendant's July 25, 1980, letter, and defendant's reliance thereon, estopped plaintiff to deny the existence of the modified contract. The trial court made general findings that plaintiff had proved her two claims and defendant had failed to prove its counterclaims. The court entered a decree quieting title in

.plaintiff and a judgment against defendant for $17,243.85 in special damages, which included $5000 in attorney fees, and for $5000 in punitive damages.

■ On appeal, plaintiff has moved to strike defendant's brief for failure to comply with ORAP 7.17 and 7.19. Defendant's "Statement of Facts" fails to comply with ORAP 7.17,[2] because it refers to matters in pretrial depositions that were not offered into evidence at trial. Those matters should not have been included in the brief, and we will disregard them. Defendant incorrectly interpreted the term "record" in ORAP 7.17(8) and ORS 18.335 to include depositions not offered in evidence. Because defendant's brief clearly shows which "facts" came from the depositions, and because defendant made a good faith attempt to comply with the rule, we deny plaintiff's motion to strike the entire brief.

Defendant's assignments of error do not "set out verbatim the pertinent portions of the record," as required by ORAP 7.19(2). Plaintiff's quiet title claim and defendant's counterclaims sound in equity, however, and at the time the briefs were filed, ORAP 7.19 applied only to appeals in actions at law. Assignments of error were not required in equity appeals under former ORAP 7.20. We will address below the merits of the assignments of error related to defendant's counterclaims and affirmative defenses to the quiet title action.

■ Defendant's other assignments of error concern the slander of title claim, an action at law. Defendant challenges the sufficiency of the evidence, arguing that plaintiff failed to prove the elements of slander of title and aggravated conduct necessary to support an award of punitive damages. Defendant also raises constitutional

[2] At the time the briefs were filed in this case, ORAP 7.17 provided, in part:

"The appellant's brief shall * * * set forth * * *

"* * * * *

"(e) A concise but complete summary of all the facts of the case material to the determination of the question or questions presented for appellate decision. The summary shall be in a narrative form with reference to the place in the audio record, transcript, narrative statement, record or abstract where such facts appear * * *."

[3] ORAP 7.20 was repealed on June 1, 1982.

challenges to the punitive damages award and contends that no basis in law exists for the award of attorney fees. As noted above, defendant failed to comply with ORAP 7.19 as to slander of title. The apparent reason defendant did not set out the pertinent portions of the record to support these assignments of error is that it failed to raise and preserve the issues at trial. Because defendant raised these issues for the first time on appeal, we will not consider them. *Lord Electric Co. v. Pac. Intermountain Exp. Co.,* 282 Or 335, 578 P2d 776 (1978).

On plaintiff's equity claim, defendant argues that the trial court erred in denying its three counterclaims for specific performance. Two of the counterclaims are based on the July 25, 1980, letter, which was offered but not received in evidence. We will assume, without deciding, that the letter should have been received.

■ Defendant's first counterclaim alleges that the July 25, 1980, letter modified the earnest money contract, that plaintiff accepted the terms of the modification by failing to object within a reasonable time and that she breached the modified agreement by failing to complete the sale. We do not agree.

> "The law is quite clear that an acceptance by silence can only arise when the circumstances existing are such that a duty arises requiring a party to speak. * * *
>
> "A duty to speak then can arise only when an offerer has a right to demand some action on the part of the offeree.
>
> " 'No one receiving an overture to change an agreement to which he is a party is obliged to answer the same. His silence cannot be construed as an acceptance if nothing else is shown.' * * *" *Suitter v. Thomson et ux,* 225 Or 614, 623, 358 P2d 267 (1961). (Citations omitted.)

Plaintiff's failure to respond to the letter did not constitute acceptance of its terms, because defendant failed to prove facts giving rise to a duty to speak on the part of plaintiff. Consequently, defendant's letter did not modify the earnest money contract.

■ Defendant's second counterclaim asserts that plaintiff should be estopped to deny acceptance of the terms

of defendant's letter, because defendant relied to its detriment on plaintiff's silence. This argument fails for reasons similar to those discussed above.

> "* * * [I]t is also well established that silence or passive acquiescence is not alone sufficient to constitute an estoppel by conduct from asserting a right. [Citation omitted.] In addition, there must have been a duty to speak or give notice * * *." *Schmeck v. Bogatay,* 259 Or 188, 198, 485 P2d 1095 (1971).

■ Defendant argues that plaintiff had a duty to give notice that she was terminating the earnest money contract and that her June 23, 1980, letter was too equivocal to constitute sufficient notice. Whether plaintiff had a duty to give notice that she was terminating the original contract, however, is irrelevant. Defendant's estoppel argument relates to the contract as purportedly modified by defendant's July 25, 1980, letter, not to the original contract. Therefore, defendant needed to prove that plaintiff had a duty to give notice that she was not accepting the terms of the July letter. Nothing in the record provides a basis for such a duty. Because defendant did not prove that plaintiff accepted the terms of its July 25, 1980, letter and did not prove that plaintiff was estopped to deny her acceptance, defendant is not entitled to specific performance of the sale under the terms in its letter.

Defendant's third counterclaim asserts that plaintiff breached the earnest money agreement by withdrawing her papers from escrow on July 24, 1980. The parties agree that under the terms of the contract time was of the essence, that closing was to occur on June 20, 1980, that plaintiff waived that closing date[4] and that plaintiff's July 18, 1980, letter attempted to make time of the essence for a July 23, 1980, closing. Defendant argues that plaintiff's letter did not make time of the essence for a July 23, 1980, closing, because her demand that defendant close within five days was unreasonable.

---

[4] In her brief, plaintiff argues that defendant should not be allowed to argue that plaintiff waived the June 20, 1980, closing date. Plaintiff's own pleadings, however, assert that her July 18, 1980, letter modified the closing date provisions of the contract.

The Supreme Court addressed the manner in which a seller can make time of the essence for the buyer's payment of the purchase price after the seller has waived the time for performance provision of a contract in *Peck v. Security Bank of Oregon*, 276 Or 61, 67, 554 P2d 505 (1976):

> "The law is firmly settled that a vendor who waives prompt performance of the payment of the purchase price under a land sale contract and grants the purchaser an indefinite extension of time within which to perform must, before he can declare a forfeiture (1) give notice to the purchaser that he intends in the future to require prompt performance of the contract, and (2) give the purchaser a reasonable time within which to perform. * * *"

Although *Peck* involved the *forfeiture* of earnest money under an earnest money contract, the reasonable notice rule also applies to the *termination* of an earnest money contract. *See* 3A Corbin, Contracts § 713 (1960).

Plaintiff's July 18, 1980, letter provided clear notice that if defendant failed to perform by July 23, 1980, its right to purchase the property under the earnest money agreement would terminate. Defendant knew that, under the contract, it was required to perform by June 20, 1980. Although plaintiff through her actions extended the time for performance, defendant knew on July 11, 1980, that its failure to perform has created a financial burden for plaintiff. At that time, defendant stated it would close in one week. On July 17, plaintiff's agent expressed plaintiff's desire to close quickly, and defendant again said it could close in one week. After plaintiff gave notice on July 18, 1980, that she would require performance by July 23, defendant was aware that his failure to perform by that date would terminate the transaction.

■ ■  We conclude that under these circumstances five days was a reasonable time and that time was of the essence for a July 23, 1980, closing. When time is of the essence for payment of the down payment under an earnest money contract and the purchaser fails to tender the down payment within the specified time, the purchaser is generally not entitled to specific performance. *Usinger v. Campbell*, 280 Or 751, 572 P2d 1018 (1977). Here, defendant

failed to tender the down payment by July 23, 1980, and plaintiff had fully performed before that date. Consequently, defendant is not entitled to specific performance.[5]

Affirmed.

---

[5] Defendant argues that, because the trial court erred in denying the counterclaims for specific performance, it also erred in quieting title in plaintiff. Because we decide that the trial court properly denied the counterclaims, we need not address the quiet title issue.