Argued and submitted July 29, 1983, reversed and
remanded with instructions January 11, 1984

# DEYOE,
*Appellant,*

*v.*

# HOLLOWAY,
*Respondent.*

## (79-3003-E-1; CA A26150)

674 P2d 1187

Richard A. Stark, Medford, argued the cause for appellant. With him on the brief was Haviland and Stark, Medford.

Ervin B. Hogan, Medford, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Van Hoomissen, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Plaintiff appeals from the trial court's denial of his request for judicial dissolution of a partnership and an accounting. We conclude that the trial court erred by not requiring defendant to account for the firm's gross commission receipts and profits for the 10 1/2 months that the partnership was in existence.

On June 1, 1978, plaintiff and defendant entered into a written partnership agreement and a written agreement of sale. Under the terms of these agreements, plaintiff was to purchase a one-half interest in the Leland Clark Insurance Agency for $73,500. Plaintiff, who formerly sold insurance for another agency, was credited with $11,000 on the purchase price for commissions that it was estimated the partnership would receive from business with clients plaintiff had before commencing work with the partnership. However, during the first five years of the agreement, plaintiff's interest in the partnership was not to include the full amount of that estimated credit. Rather, in the event of dissolution, his interest under the partnership agreement, "be adjusted to reflect the actual amount of commissions received by the partnership as determined by the accountant." Plaintiff was to pay the $62,500 balance by paying defendant $200 a month, plus seven percent interest on the unpaid balance. Plaintiff made only two of those payments between June 1, 1978, and April 19, 1979.

Pursuant to the partnership agreement, defendant elected to terminate the partnership after 10 1/2 months. Plaintiff requested defendant to furnish an accounting of the firm's gross commission receipts so that the value of his interest could be ascertained and settlement be made according to the provisions of the partnership agreement. Defendant refused to honor the request.

Defendant contends that plaintiff's interest in the business was terminated for cause pursuant to paragraph 17 of the partnership agreement and, therefore, is governed by the default provisions of paragraph 7 of the sales agreement, because plaintiff had failed to make all the monthly payments. However, defendant concedes that certain statements he had made to plaintiff constituted a waiver of the sales agreement's time of the essence provisions. In his notice terminating the

partnership, defendant indicated that he was doing so because plaintiff was in default for failure to make the monthly payments. The trial court upheld defendant's position, reasoning that plaintiff had lost his waiver claim, because he had failed to tender the delinquent payments within a reasonable time after the declaration of default that marked the termination of the partnership.[1] *See Stinemeyer v. Wesco Farms, Inc.,* 260 Or 109, 487 P2d 65 (1971). However, defendant never requested that the delinquent payments be made up, and plaintiff did not challenge the partnership termination. He merely requested an accounting of the firm's gross commission's receipts so that he could ascertain the value of his interest, if any. Defendant did not respond to plaintiff's request for an accounting.

We do not accept the characterization of defendant's termination of the partnership as an exercise of the default provisions of paragraph 17 of the partnership agreement *and* paragraph 7 of the sales agreement. In the first place, paragraph 17 expressly requires that the amount payable to plaintiff in the event of a termination for default be determined under paragraph 15 of the partnership agreement. Moreover, defendant's letter made no reference to the agreement of sale, let alone what rights or remedies under paragraph 7 he had elected to pursue. We conclude that defendant's termination could only have been an exercise of his unquestioned right, under paragraph 14 of the partnership agreement, to terminate voluntarily within a five-year period. Under that paragraph, too, a termination of the partnership has to comply with the procedures for dissolution on the death of a partner contained in paragraph 15 of that agreement, which provides in pertinent part:

"The value of either partner's interest shall be determined by this paragraph and shall continue as an agreed value until modified as follows: It is agreed that the value of each

---

[1] Plaintiff was notified of the termination by letter:

"Dear Mr. DeYoe, Jr.:

"As of this date, 4/19/79, the partnership between Holloway and DeYoe is terminated. Paragraph 17 of our agreement authorized the above action due to default.

"Sincerely,

"James L. Holloway"

partner's interest shall be equal to the firm's gross commission receipts during the last full calendar year. The value of each partner's initial interest in the partnership hereby formed is the sum of $73,500. * * * [Plaintiff's] interest in the partnership would be reduced by the amount still due and owing unto [defendant] under the terms and conditions of the purchase and sale agreement executed by the parties on even date with this partnership agreement.[2] * * *

"During the first 5 years of this agreement [plaintiff's] interest in the partnership shall not include the [$11,000][3] which amount was credited to [plaintiff] for commissions which would be received by the partnership from sales made by [plaintiff] prior to his commencing work with the Leland Clark Insurance Agency. However, [plaintiff's] interest would be adjusted to reflect the actual amount of commissions received by the partnership as determined by the accountant."

Defendant's calculation of plaintiff's interest under paragraph 15 of the partnership agreement is:

| | | |
|---|---|---|
| "Initial Value: | | $73,500.00 |
| "Less Balance Due on Sales | | |
| Contract as of termination: | | |
| "Principal: | $62,500.00 | |
| "Interest at 7% | | |
| (10 1/2 months): | 3,828.00 | |
| "Payments: | (400.00) | |
| "Balance: | $65,928.00 | (65,928.00) |
| "Less Credit Allowed on Purchase | | |
| Agreement: | | (11,000.00) |
| "Balance: | | ($3,428.00) |

"The calculation mandated by the agreement yields a negative value as shown for plaintiff's interest. Of course, to this must be added any commissions received by the partnership on account of sales made by DeYoe before the

---

[2]In pertinent part, the agreement of sale provides:

"The purchase price for the one-half (1/2) interest in the business described in paragraph 1 is Sixty Two Thousand Five Hundred Dollars ($62,500). * * * Buyer shall make monthly payments of $200 plus interest. In addition, the principal may be reduced at any time without penalty. The unpaid balance shall bear interest at the rate of seven percent (7%) per annum."

[3]Although the partnership agreement indicates that the amount of the credit was to be $10,000, both parties agree that that is an error and that the actual amount of the credit is $11,000.

commencement of the partnership. As far as is known to defendant, there were no such commissions."

We disagree with defendant's calculations in two important respects. First, we do not agree that the language "* * * [t]he value of each partner's interest shall be equal to the firm's gross commission receipts during the last full calendar year" denies plaintiff his share of the partnership's gross commission receipts simply, as defendant contends, because the partnership had not been in existence for a full calendar year at the time of its termination. The full calendar year language refers to a period of time used for accounting convenience and is not a condition for sharing the firm's gross commission receipts. To read it otherwise would empower defendant to work a forfeiture of plaintiff's interest accruing in any given year. Under paragraph 15 calculation of the value of plaintiff's interest includes 50 percent of the gross commission receipts for the 10 1/2 month period from June 1, 1978, to April 19, 1979, subject to a setoff for the amounts taken by plaintiff during that time in the form of a draw.[4]

Second, we disagree with defendant's treatment of the $11,000 credit given plaintiff for commissions that the partners anticipated would be received from sales to clients of plaintiff before he commenced work with the agency. Defendant contends that the plain language of the partnership agreement bars that credit for the first five years of the partnership's existence. The agreement expressly provides, however, that in the event that the partnership is terminated within that five year period, plaintiff's "interest [in the $11,000 estimated credit] would be adjusted to reflect the actual amount of commissions received by the partnership as determined by the accountant." Defendant contends that this language refers to specific sales made by the plaintiff before coming to the agency that would actually inure to the benefit of the partnership. Such a narrow reading of the provision defeats its underlying purpose to credit plaintiff for the income the partnership would enjoy as a result of his development of business when he was with a competing insurance firm. Thus the amount of the credit (if determined before five

---

[4] Paragraph 4 of the partnership agreement provides "[t]he net profits of the partnership shall be divided equally between the partners * * *."

years) would be the actual amount of commissions, as determined by the accountant, that the partnership received on account of plaintiff's pre-partnership business. Plaintiff is entitled to an accounting of the partnership's gross commissions, profits and losses and the amount of income from sales to his pre-partnership clients.

Reversed and remanded with instructions to order an accounting.