Argued and submitted November 4, 1985, reversed and remanded August 13, reconsideration denied October 3, petition for review denied October 28, 1986 (302 Or 159)

PAGE,
*Appellant,*

*v.*

CUSHING,
*Respondent.*

(83-1887-L; CA A33768)

724 P2d 323

Ervin B. Hogan, Medford, argued the cause and filed the brief for appellant.

Patrick Ford, Medford, argued the cause and filed the brief for respondent.

Before Gillette, P. J., Pro Tempore, and Van Hoomissen and Young, Judges.

YOUNG, J.

Van Hoomissen, J., concurring.

## YOUNG, J.

In this legal malpractice action, plaintiff claims that defendant negligently represented him in an earlier transaction involving a land sale contract that resulted in a judgment of strict foreclosure against plaintiff. A jury returned a special verdict finding plaintiff 95 percent negligent and defendant five percent negligent. Judgment was entered in favor of defendant, and plaintiff appeals. We reverse.

Plaintiff alleged nine specifications of negligence in his amended complaint. Some charge defendant with negligence in defending the foreclosure action, while others charge him with negligently failing to advise or communicate to plaintiff matters relating to the underlying contract and the litigation. With respect to the specifications charging negligence in the conduct of the litigation, plaintiff had to show that he had a valid defense which, had it not been for defendant's alleged negligence, would have resulted in a favorable judgment in the foreclosure action.[1] *Harding v. Bell,* 265 Or 202, 508 P2d 216 (1973).

On April 18, 1980, plaintiff entered into a contract to buy land from the Hamricks for $85,000. Defendant represented plaintiff and drafted the contract. The contract required plaintiff to pay interest only for two years at the rate of ten percent per annum on a principal balance of $84,000. Interest started April 1, 1980, and was to be paid monthly, beginning May 1, 1980. A $19,000 payment was due April 1, 1982, with the balance to be amortized over a period of years. The contract included a time of the essence clause and default provisions,[2] the latter being central to the dispute between the

---

[1] At the close of the evidence, the trial court granted defendant's motion to strike and withdraw from the jury's consideration two specifications alleging that defendant was negligent in (1) failing to raise a defense that the contract seller failed to give notice of default as provided by the contract, and (2) in stipulating to an "interlocutory" judgment. That action by the trial court is assigned as error.

[2] Reinstatement of the time of the essence clause is not involved. The default provisions provide:

"14. *DEFAULT:* In the event of the failure of purchaser to make any of the payments herein provided or to perform any of the other terms or conditions of this agreement on his part to be kept and performed, then sellers at their option, shall have the right to declare the entire balance of the purchase price immediately due and payable and exercise any of the following rights or remedies:

"a. Retake possession of said property, in which event any payments made

parties in the present action.

The contract and related documents were deposited with an escrow agent for collection. From the beginning, plaintiff failed to pay the monthly interest payments timely. The first payment due May 1 was paid May 15. The payment due June 1 had not been paid when the sellers wrote plaintiff on June 24, 1980. The letter informed plaintiff that he was in default, because of the late June payment and emphasized that payments were due on the "first day of each month" and that late payments were not acceptable. It concluded:

> "You are hereby notified that all payments must be brought current within thirty days and that late payments will not be accepted in the future and any payment not made promptly and as agreed shall constitute an act of default. *This letter shall serve as notice under the contract and you will receive no further notice for your failure to make payments timely and in full.* I trust a foreclosure will not be necessary and you will make your payments promptly and bring this matter current and keep it current." (Emphasis supplied.)

The letter caused plaintiff to seek defendant's advice.

After the letter, the June 1 installment was paid June 27; the July 1 installment was paid July 8; and the August 1 installment was paid September 4. On November 10, the sellers, without notice to plaintiff, cancelled the escrow and withdrew the documents. On December 4, plaintiff paid $1,400 to the escrow agent, which represented the September and October installments. The escrow agent returned the payment, explaining that the sellers had unilaterally terminated the escrow.

---

by purchaser shall be considered as rental for said property and as liquidated damages for the breach of this agreement;

"b. Bring suit to foreclose this agreement in the manner provided by law;

"c. Sue purchaser for the balance of the purchase price then due;

"d. Exercise any other right or remedy which may be available to them either in law or in equity.

"15. *NOTICE OF DEFAULT*: Before declaring any default hereunder, sellers shall notify purchaser by United States certified mail addressed to purchaser at 984 E Vilas Road, Central Point, Oregon 97502 in which notice they shall specify the respects in which they claim this agreement is in default and purchaser shall have thirty (30) days from the date of the mailing of such notice in which to remove such claimed default, if any in fact exists, and to reinstate this agreement."

On December 16, 1980, plaintiff followed defendant's advice and sent a check for $2,800 direct to the sellers. The check was in payment of four monthly installments then past due. Plaintiff's check crossed in the mail with a letter dated December 15, 1980, from the sellers. The letter itemized the payment history and recited the fact that plaintiff knew that late payments were unacceptable and stated:

"Demand is hereby made for the full balance of the contract of April 18, 1980, namely the sum of $86,935.94, within 30 days from the date of this letter."

On January 21, 1981, the sellers wrote two letters to plaintiff. In one, they rejected the tender of $2,800. The other included a delinquent payment calculation requiring plaintiff to pay $6,530.84 to bring the payments current through February 1, 1981. Plaintiff testified that defendant told him that the calculation was wrong and that defendant would discuss it with the sellers' attorney. Plaintiff claims that, on the basis of that advice, he did not pay the calculated sum or make any further payments. In March, 1981, the sellers commenced the strict foreclosure action.

After the foreclosure action was filed, the sellers' attorney and defendant worked toward a settlement. On November 24, 1981, defendant, on plaintiff's behalf, entered into a stipulated interlocutory judgment, which required plaintiff to pay $12,200 on or before December 19, 1981; $700 on the first day of January, February and March, 1982; and $19,000 on or before April 1, 1982. The judgment provided that if the payments were made by the dates specified, the action would be dismissed and the contract reinstated. If any payment was late, the sellers would be entitled to a judgment of strict foreclosure without further hearing.

On November 30, 1981, defendant sent plaintiff a copy of the stipulated judgment. He made the $12,200 payment. He testified that he made the payments due on the first day of January, February and March, 1982, by delivering to defendant's office checks dated January 5, February 5 and, apparently, March 16. The sellers accepted the late January payment but rejected the late February payment. On February 25, 1982, an interlocutory decree of strict foreclosure was granted. Defendant moved to set aside the decree, arguing, *inter alia,* that the sellers had waived strict compliance with

the stipulated judgment by accepting the late January payment. The trial court ruled that, if the April 1, 1982, payment of $19,000 was made when due, the motion would be granted. If payment was not timely, the motion would be denied and a final decree would be entered. Plaintiff did not make the April payment. On April 12, 1982, a final decree of strict foreclosure was granted.

Plaintiff makes five assignments of error. The first two claim that it was error to strike the specifications charging defendant with negligence in defending the foreclosure action. *See* n 1, *supra.* He also assigns as error the admission of evidence of his financial condition; the giving of a jury instruction dealing with an attorney's duty to advise the client; and the refusal to give a jury instruction excusing the tender of payments.

Concerning the first assignment, plaintiff argues that it was error to strike the specification that defendant was negligent in failing to raise as a defense in the foreclosure action that the sellers had failed to give notice of default, as required by paragraph 15 of the contract. *See* n 2, *supra.* The parties agree that whether the sellers gave adequate notice is a question of law for the trial court.

The trial court ruled that the sellers' notice of default was sufficient under the contract. The court took into account the parties' dealings and communications, the fact that plaintiff knew that his payments were delinquent and, specifically, that the letter of January 21, 1981, set forth a demand for payment of a specified sum and that plaintiff failed to pay or tender a payment that he was obligated to make under the contract within 30 days.

The first question is whether the sellers complied with the default provisions of the contract. The general rule is that a "contract must be construed according to its plain terms" and "strictly enforced according to [those] terms." *City of Reedsport v. Hubbard et ux,* 202 Or 370, 385, 274 P2d 248 (1954). The default provisions are clear and unambiguous and neither party claims to the contrary.

Paragraph 15 is somewhat unusual in that it does not except the giving of a notice of default for the failure to make payments as agreed. On the contrary, paragraph 15 provides

that "before declaring *any* default" the sellers must give notice to the purchaser, specifying the nature of the default. The purchaser has 30 days to cure. The sellers could not accelerate the balance due (or exercise the other remedies) under paragraph 14 for late payments without first giving notice of default and an opportunity to make the delinquent payments under paragraph 15. Only in the event that the purchaser fails to cure the default within 30 days can the sellers exercise their remedies under paragraph 14. We turn to the sellers' letters to plaintiff to determine whether they complied with the notice requirements.

The June 24, 1980, letter satisfied the notice requirements of paragraph 15. Plaintiff had 30 days to cure, which he did soon after receiving the letter. The sellers also stated there would be no further notice of default "to make payments timely and in full." While plaintiff did not respond to this attempt by the sellers to modify paragraph 15, his silence did not constitute an acceptance of its terms. An acceptance by silence can only arise when there is a duty to speak. *Boehnlein v. Ansco, Inc.,* 61 Or App 389, 394, 657 P2d 702, *rev den* 294 Or 682 (1983). There is nothing to show that plaintiff had such a duty.

In the December 15, 1980, letter the sellers accelerated the balance and demanded full payment of the contract within 30 days. Plaintiff was behind four monthly installments at the time; nevertheless, under paragraph 15 the sellers had only the right to demand payment of the amount plaintiff was in arrears. The sellers could not demand full payment on the contract until the 30-day grace period to pay the arrearage had expired.

In one of the January 21, 1981, letters, the sellers simply rejected plaintiff's tender of $2,800, because it was insufficient. It appears that the other letter on January 21 was written in response to a request for the amount needed to bring the payments current.[3] As matters then stood between

---

[3] "You have asked for a current figure to bring the matter current. Our figures show that the sum of $6,530.84 is needed to bring the contract current through

the sellers and plaintiff, the sellers had demanded payment of the balance. The letter offered a settlement; it was not a notice of default under paragraph 15. That was the last written communication before the sellers filed the foreclosure action.

■      The notice of default and the expiration of time to cure are conditions precedent to the sellers exercising their remedies under paragraph 14. After plaintiff cured the default claimed by the letter of June 24, 1980, the sellers never again gave notice of default and the opportunity to cure because of delinquent payments. Instead, when plaintiff was four payments behind, the sellers, by the letter of December 15, 1980, demanded the balance in 30 days. Because they did not perform the condition precedent of giving notice of nonpayment and the opportunity to cure, the action for strict foreclosure was premature, and it was subject to being dismissed. *See City of Reedsport v. Hubbard et ux, supra,* 202 Or at 385.

■      We hold that the trial court erred in ruling as a matter of law that plaintiff was given adequate notice of default and an opportunity to cure. If defendant had raised the notice requirement as a defense, plaintiff would have been entitled to an abatement or dismissal of the foreclosure action. *See Swick v. Mueller et ux,* 193 Or 668, 238 P2d 717 (1952); *Hartz v. Ayromloo,* 62 Or App 534, 538, 661 P2d 573 (1983). Plaintiff introduced evidence that a lawyer of reasonable skill, diligence and competence would have raised the defense. It was a question of fact for the jury to determine whether

---

February, 1981. We compute this as follows:

| "DATE PAYMENT MADE | AMOUNT PAID | INTEREST | PRINCIPAL | BALANCE |
|---|---|---|---|---|
| Apr  1, 1980 | interest started | | | $84,000.00 |
| May 16, 1980 | $700.00 | $1058.63 | | $85,058.63 |
| Jun 30, 1980 | $700.00 | $1048.67 | | $86,107.30 |
| July  9, 1980 | $700.00 | $ 212.32 | $487.68 | $85,619.62 |
| Sept 5, 1980 | $700.00 | $1360.53 | | $86,980.15 |
| Feb   1, 1981 | | $3550.69 | | $90,530.84 |

"* * * * *

"In order to compromise and settle this matter, and for no other reason, the [sellers] would settle for the sum of $6530.84, which is the interest from the date of the contract to February 1, 1981, which would bring the contract back to $84,000.

"I will wait to hear from you in this regard."

defendant was negligent in failing to assert the defense. *See Arp v. Kerrigan,* 287 Or 73, 89, 597 P2d 813 (1979).

Although nothing more is necessary to dispose of this case, we consider plaintiff's other assignments of error, because they may arise on retrial. Plaintiff argues that the trial court erred in withdrawing from the jury the allegation that defendant was negligent in entering into the stipulated interlocutory judgment without providing for a grace period for making the payments. Suffice it to say that whether that specification of negligence should be submitted to the jury is dependent in part on the evidence admitted on retrial.

■    Plaintiff next claims that the trial court erred in admitting exhibits showing plaintiff's failure to pay other obligations timely.[4] He argues that the evidence is irrelevant and highly prejudicial. Defendant argues that the evidence is admissible, *inter alia,* to rebut plaintiff's claim that, during the relevant time, "[he] was, at all times, willing and, in the absence of negligence of defendant" able to make the required payments. Although there are other possible explanations for plaintiff's failure to pay his obligations, the exhibits are relevant to his ability to make the contract payments.[5] *See Byrd v. Lord Brothers,* 256 Or 421, 425, 473 P2d 1018 (1970).

■    Once evidence is found to be relevant, it may be necessary for the trial court to balance its probative value against the danger of prejudice, surprise and confusion. OEC 403; *Carlson v. Piper Aircraft Corp.,* 57 Or App 695, 700, 646 P2d 43, *rev den* 293 Or 801 (1982). We review the balancing process only for an abuse of discretion. *State v. Madison,* 290 Or 573, 579, 624 P2d 599 (1981); *Carter v. Moberly,* 263 Or 193, 200, 501 P2d 1276 (1972). "We simply determine whether, on the facts of the particular case, the trial court's ruling was within the reasonable or permissible range. We need not determine whether [the] ruling was the only one possible." *Carter v. Moberly, supra,* 263 Or at 201. In the present case, the evidence is marginally relevant and not so prejudicial that the

---

[4] The 12 exhibits consist of various assessments and liens for delinquent taxes and State Accident Insurance Fund contributions.

[5] Included among the 12 exhibits are exhibits F, G and L. It appears that plaintiff incurred the indebtedness evidenced by those exhibits after the decree of strict foreclosure. We question whether they are probative of plaintiff's financial condition during the relevant time.

trial court was required as a matter of law to exclude it. The trial court was within its discretion in admitting it.

Plaintiff assigns error to giving of this instruction:

"I instruct you that an attorney has the duty to explain to the client his duties under a contract or other document which binds the client, where the attorney has reason to believe the client does not understand the terms of the agreement or the nature of his obligations. On the other hand, *there is no duty to explain, when the nature of the obligation is apparent from the plain meaning of the document* and the client appears to read and speak the English language." (Emphasis supplied.)

He argues, *inter alia,* that it is defective, because it limits an attorney's duty to explain a contract in only those instances in which the attorney has reason to believe the client does not understand the terms of the agreement. We agree. "[I]t would make no sense to say that a lawyer has no duty to a client when analyzing simple language in a legal document." *Sommerfeldt v. Trammell,* 74 Or App 183, 187, 702 P2d 430 (1985). The defendant had a "duty to use that care, skill and diligence that would ordinarily be used by lawyers in the community in similar circumstances." *Sommerfeldt v. Trammell, supra.* It was error to give the instruction.

Plaintiff argues that the court also erred in failing to give this instruction:

"The law does not require a party to do a vain or useless act. Therefore, I instruct you that if you find that a proper tender of payment by [plaintiff] was rejected by [the sellers], [plaintiff] would have no obligation to make further tenders, in the absence of some indication that further proper tenders would be accepted."

Defendant alleged that plaintiff was contributorily negligent in failing to make the interest payments after the foreclosure action was filed. Plaintiff believed that he was relieved from making those payments. He argues that, because the sellers rejected his $2,800 tender, he no longer had a duty to tender payments until there was some indication that they would be accepted.

For a tender to be valid, it must be for the full amount of the liability. *DeLashmutt v. Keller,* 43 Or App 83, 86, 602 P2d 312 (1979). Plaintiff's tender was not sufficient to cure his

default. The contract required plaintiff to make monthly interest payments:

> "Purchaser agrees to pay interest at the rate of ten percent (10%) per annum upon the unpaid balance, interest to commence on April 1, 1980. The interest shall be first deducted from each monthly payment and the balance applied to reduction of the principal."

With a beginning principal balance of $84,000, the interest payments would be about $700 a month, if timely made. By December 16, 1980, the accrued and unpaid interest exceeded the tender of $2,800. The trial court was correct in refusing to give the instruction.

Reversed and remanded.

**VAN HOOMISSEN, J.,** concurring.

On the specific facts of this case, I agree with the majority's result. I write separately only to note that this case does not modify the well established rule that a seller may reinstate a time-of-the-essence clause and still be able to declare a default without giving further notice to the buyer that he is in default. *See Stinemeyer v. Wesco Farms, Inc.,* 260 Or 109, 487 P2d 65 (1971); *Salishan Hills Inc. v. Krieger,* 62 Or App 84, 660 P2d 160, *rev den* 295 Or 259 (1983); *Crisp v. Hill,* 42 Or App 631, 601 P2d 814 (1979). The notice clause in this contract, which was drafted by defendant, required that plaintiff be given notice of any default and that he have 30 days to cure it.