Argued and submitted November 7, 1986, reversed and remanded February 11, reconsideration denied April 10, petition for review denied May 12, 1987 (303 Or 370)

# GORDON,
*Appellant,*

*v.*

# SCHUMACHER et ux,
*Respondents.*

(36455; CA A36958)

733 P2d 35

Lawrence W. Erwin, Bend, argued the cause for appellant. With him on the briefs was Babb, Avedovech & Erwin, Bend.

Terrance J. Slominski, Portland, argued the cause and filed the brief for respondents.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

Rossman, J., dissenting.

## BUTTLER, P. J.

In this action for specific performance of a land sale contract, plaintiff appeals from a judgment entered at the close of his case on defendants' motion. ORCP 54B(2). Because the trial court erred, as a matter of law, in concluding that a check mailed by defendants to plaintiff on the last day of the grace period, but received after the grace period had expired, constituted timely payment, we reverse and remand.

We view the evidence in the light most favorable to the party opposing the motion to dismiss. *See Brown v. J.C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984). In 1979, plaintiff and defendants executed a land sale contract whereby defendants agreed to buy a home in Bend from plaintiff for $83,500. Defendants made a down payment of $13,500 and agreed to pay the balance, including interest, at the rate of $619 per month. The contract required "installments to be paid on the 1st day of each month" and also contained a default provision:

"Time is of the essence of this contract. A default shall occur if:

"(a) Purchaser fails to make any payment at the time required, or within ten (10) days thereof."

Willamette Savings and Loan held a trust deed on the property. Plaintiff's monthly payment to Willamette was $619.57. In 1983, the parties entered into an escrow agreement with Wynwood Agency in Bend which, among other things, provided that defendants' monthly contract payment was increased by fifty-seven cents so that it would equal plaintiff's obligation to Willamette. After receiving defendants' payment, Wynwood was to pay the money directly to Willamette.

By the terms of the contract, defendants' monthly payment was due on the 1st of each month; however, they would not be in default unless they failed to "make" any payment within ten days after the 1st. During early 1984, Wynwood received payments from defendants on January 19, February 22, and March 14. Because of the late payments, plaintiff's payments to Willamette were late, thereby jeopardizing that loan.[1] On March 8, 1984, plaintiff's counsel sent the following letter to defendants:

---

[1] Defendants argue that, because plaintiff's payments to Willamette were late, plaintiff is barred from maintaining this action.

"Dear Mr. & Mrs. Schumacher:

"Please be advised that I represent Mr. John R. Gordon of Bend, Oregon, seller under that certain Contract of Sale dated October 22, 1979 for purchase of Lot Thirteen (13), Block Five (5), Choctaw Village Tract 'A', Bend, Oregon.

"The Contract requires that you pay the sum of $619.00 per month including interest at 11% per annum, with payments due on the first of each month.

"The default provisions at page four (4) of the Contract provide that you are in default if the payment is not received within ten (10) days of the due date.

"You made the November 1983, December 1983, January 1984, and February 1984, payments outside of the ten day (10) period provided for in the contract.

"Notice is hereby given that the 'time is of the essence' clause is reinstated, and any delinquent payments not *received by the escrow company on or before the due dates* will not be accepted, a default will be declared, the full balance of the contract will be accelerated, and such action as appropriate will be taken to foreclose the Contract." (Emphasis supplied.)

Plaintiff's counsel followed that letter with another one on March 15:

"Dear Mr. & Mrs. Schumacher:

"It appears that you did not receive our earlier letter until March 13, 1984 regarding the Gordon Purchase Contract.

"We have directed Wynwood agency to go ahead and cash your check dated the tenth of March, 1984.

"However, if your checks are not *received* by the tenth of each month as required by the contract from here on out, we will taken [*sic*] such action as is appropriate to foreclose the contract." (Emphasis in original.)

Mr. Schumacher testified that he did not recall receiving that letter until his attorney produced it from his file. Wynwood received the April payment on the 4th of that month; however, the May payment was not received by the 11th, whereupon plaintiff's counsel sent Wynwood the following letter, dated May 14:

"The April[2] payment was not received by the 11th of May for the above referenced escrow, as required by the Contract.

"Therefore, the Escrow is to be cancelled as the Contract is in default and the full balance is now due and payable. No sum shall be accepted except the full contract balance with the accrued interest. Further inquiries may be directed to this office."

A copy of that letter was sent to defendants.

Wynwood received defendants' check on May 14, but returned it, as instructed by plaintiff. Defendants testified that they mailed the check on Thursday, May 10, from Portland, addressed to Wynwood in Bend. An employe of Wynwood testified that the payment was marked as having been received on Monday, May 14. The question is whether a payment that is mailed within the grace period but is not received by the creditor until after the grace period has expired has been "made" timely. The trial court held that it was timely, relying on ORS 81.010[3] and ORS 73.6040(3),[4] and granted defendants' motion to dismiss at the close of plaintiff's case. ORS 81.010 describes what a tender is, and ORS 73.6040(3) describes the equivalent of a tender of payment on commercial paper. Neither statute relates to the timeliness of payment.

*Sterrett v. Stoddard Lbr. Co.*, 150 Or 491, 506, 46 P2d 1023 (1935), approved the rule stated in 48 CJ "Payment" § 8, that

" 'a debt is payable at the place where the creditor resides, or at his place of business, if he has one, * * * and it is ordinarily the duty of the debtor to seek the creditor for the purpose of making payment.' "

---

[2] It is clear that the reference is to the May payment; defendants do not contend otherwise.

[3] ORS 81.010 provides:

"An offer in writing to pay a particular sum of money or to deliver a written instrument or specific personal property is, if not accepted, equivalent to the actual production and tender of the money, instrument or property."

[4] ORS 73.6040(3) provides:

"Where the maker or acceptor of an instrument payable otherwise than on demand is able and ready to pay at every place of payment specified in the instrument when it is due, it is equivalent to tender."

*State ex rel Ind. Sup. Co. v. Goldstein et al,* 221 Or 309, 351 P2d 39 (1960), and *Lent v. Towery,* 271 Or 41, 530 P2d 77 (1975),[5] re-approved that rule. Unless the contract provides otherwise, it is the duty of the debtor to get the payment into the possession of the creditor.

The land sale contract contains a provision that "time is of the essence" in performing the conditions of the contract. In *Smith v. Paluso,* 79 Or App 238, 241, 719 P2d 33 (1986), we said:

> "Generally, a time-essence provision in a mortgage or land sale contract is for the benefit of the one entitled to perform-ance, usually payment. If a payment is not made on time, the mortgagee or vendor may foreclose without notice and oppor-tunity to cure 'by force of the contract itself,' *Hays v. Hug,* 243 Or 175, 412 P2d 373 (1966); *Gray v.Pelton,* 67 Or 239, 135 P 755 (1913), unless the time-essence provision has been waived by the acceptance of late payments. *Stinemeyer v. Wesco Farms, Inc.,* 260 Or 109, 487 P2d 65 (1971). If it has been waived, it may be reinstated by notice that payments must be made promptly in the future and that, if they are not, the principal balance will become due immediately and the mort-gage or contract foreclosed."

Although plaintiff waived the time-essence clause by accept-ing several late payments, he reinstated it by sending the two letters on March 8 and 15, 1984.

Defendants, however, contend that the escrow agree-ment modified the land sale contract, because it provided that the escrow could be terminated if defendants made a payment 45 or more days after the due date. That provision was for the benefit of Wynwood rather than the parties to the land sale contract. There is no evidence that the escrow agreement was intended to change the substantive rights of the parties under the land sale contract, other than to increase defendants'

---

[5] The dissent relies on *Lent v. Towery, supra,* apparently for the proposition that defendants' mailing of the check was a sufficient "tender" of the payment. In that strict foreclosure case, the defendants, on the date when a payment was due, attempted on three occasions to deliver the contract payment to the plaintiff at her home, but no one was there. Plaintiff did not receive the payment and commenced the foreclosure action. There, as here, the trial court found for the defendants; but the Supreme Court reversed, holding that the defendants were in default. As an aside, the court stated that the defendants could have mailed the check and, if not objected to by the plaintiff, that would have been a sufficient tender. Here, plaintiff did object to the late payment by mail.

obligation by fifty-seven cents. The time-essence clause, the due date and the grace period remained the same. *See Hays v. Hug,* 243 Or 175, 177-78, 412 P2d 373 (1966).

■      Accordingly, the record at the close of plaintiff's case showed that defendants were in default. It is true that, because plaintiff lived in Bend, and the escrow company was in Bend, it was contemplated that defendants, who lived in Portland, would send their payment by mail. However, that is not to be equated with plaintiff's assent to having the payment *mailed* at the end of the grace period, rather than received within the grace period. In fact, the letters from plaintiff's counsel reinstating the time-essence clause specifically state that any payment not *received* within the grace period would constitute a default under the contract. There is no evidence that defendants disputed that proposition. If defendants have evidence to show that plaintiff consented to treating a payment as having been made at the time it was mailed, *see* 70 CJS, "Payment" § 7, they may adduce that evidence on remand.

Reversed and remanded.

**ROSSMAN, J.,** dissenting.

I dissent. The contract in this case provides that installments are to be paid on the first day of each month and that a default will occur if defendants fail to make any payment "at the time required, or within ten (10) days thereof." It does not provide that payments must be *received* within ten days of the first of each month. Accordingly, because I would hold that defendants made payment of the May, 1984, installment on May 10, when they mailed it to the escrow company, I would affirm the trial court.

In *Lent v. Towery,* 271 Or 41, 47, 530 P2d 77 (1975), the court stated that the defendant vendee could have mailed his payment to the plaintiff vendor and that that would have been a "sufficient tender under ORS 81.010 to 81.030" unless the vendor objected. Here, because, as the majority points out, the parties contemplated that defendants' monthly payments would be mailed to the escrow company, plaintiff was precluded from objecting to defendants' tender on that ground.

The majority apparently concludes that payment was constructively tendered only when the envelope in which it

was contained was placed in the escrow company's post office box.[1] It follows that, even if defendants had mailed the payment on May 1, the majority would have concluded that plaintiff would have been entitled to reject the tender and declare a default if it was delivered after the end of the grace period. With all due respect, one should not be so placed at the mercy of the Postal Service without the parties having so agreed.

---

[1] I assume that even the majority would hesitate before conditioning the timeliness of defendants' tender on the efficiency of the escrow company in picking up its mail.