Argued and submitted November 14, 2000, affirmed January 17, 2001

Eric H. SPIESS
and Meladie Dodds,
dba M & E Enterprises of Galt,
*Respondents,*

*v.*

James L. WHITE
and Bobbie J. White,
*Defendants,*

*and*

Donald J. HOPERICH
and Suzanne Hoperich,
who acquired title as Susanne Hoperich,
as tenants in common,
*Appellants.*

(98-04833-CV; CA A107333)

17 P3d 568

James R. Dole argued the cause for appellants. With him on the brief was Schultz, Salisbury, Cauble & Dole.

Andrew C. Brandsness argued the cause for respondents. With him on the brief was Brandsness, Brandsness & Rudd, P.C.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

BREWER, J.

## BREWER, J.

Defendants appeal from a judgment foreclosing, for nonpayment of real property taxes, a trust deed under which they are the grantors and plaintiffs are the beneficiaries. Defendants contend that the trial court erred in determining that, before commencing the foreclosure action, plaintiffs reinstated defendants' obligation to timely pay real property taxes owing against the encumbered property and to timely provide plaintiffs with proof of payment. On *de novo* review, ORS 19.415(3), we affirm.

The case was tried to the court on stipulated facts. Plaintiffs are real estate developers. In June 1994, plaintiffs sold Lot 4, Block 2, of the Americana Subdivision in Klamath County (Lot 4) to James and Bobbie White.[1] The unpaid balance of the purchase price was evidenced by a promissory note and was secured by a trust deed against Lot 4. The trust deed contained a provision requiring the grantors to pay property taxes on the property before they became delinquent and to promptly deliver receipts to plaintiffs showing timely payment. The trust deed also provided that, in the event that the taxes were not paid when due, "all sums secured [by this trust deed shall become] immediately due." Finally, the trust deed provided that time was of the essence with respect to the performance of the grantors' obligations, including the payment of property taxes.

Effective January 1, 1996, the Whites conveyed Lot 4 to defendants, who assumed the Whites' obligations to plaintiffs under the note and trust deed secured by Lot 4. At the time of the transfer, plaintiffs and defendants agreed to modify the terms of the note and trust deed in several respects not relevant to the issues before us. However, defendants' obligations with respect to property taxes under the Lot 4 trust deed remained unchanged. Before 1996, defendants had purchased several other lots from plaintiffs in the Americana subdivision. The unpaid purchase obligations in

---

[1] The Whites were named as defendants in the action but did not appear. As a result, the trial court entered a default judgment against them, and they are not parties to this appeal. Therefore, when we refer to "defendants," we refer to Donald and Suzanne Hoperich, the remaining defendants in the action.

connection with those sales also were documented and secured by notes and trust deeds against the conveyed property.

After January 1, 1996, defendants made some tax payments on Lot 4, but they failed to pay any taxes on that lot that accrued after the 1996-97 tax year. In late 1997, plaintiffs learned that property taxes on several lots purchased from them by defendants had become delinquent and the lots were subject to county tax foreclosure proceedings. On November 5, plaintiffs' attorney wrote a letter to defendants demanding that they cure the tax delinquencies before November 18. The November 5 letter noted that the county tax foreclosure list identified three lots in defendants' names, on which trust deeds existed in plaintiffs' favor, that were subject to foreclosure because of unpaid taxes. The letter warned that unless the taxes on all lots were brought current, plaintiffs would begin immediate foreclosure proceedings. Lot 4 was not specifically mentioned in the letter. Defendants brought the taxes current on only the three lots specified in the letter.

On November 24, 1997, plaintiffs' attorney again wrote to defendants. That letter acknowledged the payment of taxes on the three lots mentioned in the November 5 letter and stated that taxes were delinquent on two additional lots that were subject to trust deeds in plaintiffs' favor. Again, Lot 4 was not specifically mentioned. However, the November 24 letter also stated:

> "It is my understanding that there are *several additional vacant lots* [that] are also subject to taxes. [Plaintiffs] expect full compliance with the terms of the promissory notes and trust deeds, which includes *payment of taxes on all lots*. If all taxes are not paid and paid receipts furnished to my office * * * by December 10, 1997, action to foreclose the trust deeds will be started." (Emphasis added.)

Despite receiving the November 24 letter, defendants failed to cure the property tax delinquency on Lot 4.[2] In

---

[2] As an exception to their submission of the case on stipulated facts, the parties disagree as to whether defendants cured tax delinquencies on any other lots after November 24. As explained below, we do not find it necessary to resolve that question.

August and September 1998, plaintiffs brought separate actions against defendants to foreclose six trust deeds securing other transactions between the parties. Between September and December, the parties' attorneys unsuccessfully attempted to reach an agreement to resolve all outstanding delinquencies involving their various transactions. In December, plaintiffs filed this action to foreclose the trust deed on Lot 4.

■ The case was tried to the court in April 1999. In its opinion letter, the trial court determined that plaintiffs had waived the requirement that the Lot 4 property taxes be timely paid but concluded that the November demand letters reinstated that requirement. Defendants appeal from the ensuing foreclosure judgment. On appeal, defendants argue that the trial court erred in concluding (1) that plaintiffs reinstated the time-essence provision of the trust deed in the November 1997 letters, and (2) that plaintiffs did not waive[3] that provision again after November 1997 by continuing to accept late payments on other obligations owed by defendants to plaintiffs and by tolerating additional tax delinquencies on Lot 4 for approximately one year before commencing this action.

■ Plaintiffs concede that they had waived the time-essence provision of the Lot 4 trust deed before November 1997. In order to reinstate that provision, plaintiffs were "required to give [defendants] notice of [their] intention to insist on strict compliance with the terms of the [trust deed] in the future, and to allow a reasonable opportunity to cure past delinquencies." *Alderman v. Davidson*, 326 Or 508, 514, 954 P2d 779 (1998). Defendants contend that the November 1997 letters "could not, as a matter of law, constitute sufficient or adequate notice to allow plaintiffs to commence foreclosure."

Defendants cite several cases in which this court held that very specific demands were sufficient to reinstate a

---

[3] We have said on several occasions that "[t]he effect of accepting late payments on a seller's right to exercise a time-essence clause is usually more properly put in terms of estoppel rather than waiver." *Daly v. Fitch*, 70 Or App 18, 21 n 2, 687 P2d 1124 (1984). The issues in dispute here do not furnish an occasion to elaborate on the distinction between those principles.

waived time-essence clause. *See, e.g., Gordon v. Schumacher*, 83 Or App 544, 547, 733 P2d 35, *rev den* 303 Or 370 (1987) (" 'Notice is hereby given that the "time is of the essence" clause is reinstated * * *.' "); *Crisp v. Hill*, 42 Or App 631, 637, 601 P2d 814 (1979) (" '[I]f payment * * * is not made on or before the 25th of [the] month, Mr. Crisp will immediately pursue his legal remedies without further notice to you.' "). However, the invocation of "magic words" is not necessary to reinstate a time-essence provision. The November 24 letter was sufficient to accomplish that purpose with respect to the Lot 4 trust deed. Although couched in polite terms, it warned defendants that *all* unpaid taxes relating to any of their various transactions must be brought current by a specific deadline, or foreclosure proceedings would be commenced. It also stated that plaintiffs expected "full compliance" with the instruments governing those transactions. The letter thus "clearly conveyed [plaintiffs'] intention to reinstate the 'time-essence' provision of the [trust deed.]" *Salishan Hills, Inc. v. Krieger*, 62 Or App 84, 89, 660 P2d 160, *rev den* 295 Or 259 (1983). We reject defendants' first argument without further discussion.

■ Defendants next argue that, after November 1997, "plaintiffs continued to accept installment payments on * * * other obligations [between the parties] and made no other mention of the default in installments [that] they allege in the complaint. Their conduct between November 1997 and September 1998 was irreconcilable with the intention to foreclose they expressed in their correspondence of November 1997." Assuming that plaintiffs did tolerate late payments on other transactions,[4] we conclude that plaintiffs did not thereby again waive the time-essence provision of the Lot 4 trust deed.

■ An obligee's tolerance of late performance in a secured land transaction

> "operates as a waiver of the timely performance requirement of subsequent performances (unless otherwise expressly reinstated or unless the contract provides against

---

[1] Once again, the parties appear to disagree as to whether in fact defendants made and plaintiffs accepted late payments on any other obligations after November 1997.

an implied waiver); similarly, toleration of purchaser's late performance in one contract in a 'package' of contracts should be construed as a waiver of the purchaser's timely performance with respect to the entire package." *Walker v. Feiring*, 53 Or App 433, 438, 632 P2d 1270 (1981).

In *Walker*, five separate land sale contracts covered five adjacent residential units in the same development. The plaintiffs sold three units to the defendants under three separate contracts. With the plaintiffs' approval, the defendants purchased the other two units from different sellers—who first purchased from the plaintiffs—under two additional contracts. Each of the agreements was executed on the same date, and each contained identical provisions, including a time-essence clause. *Id.* at 435-36. The units were sold separately "in order to facilitate the eventual resale of each unit." *Id.* at 435. However, "there was ample evidence that the sale of all five lots was a 'package deal.' " *Id.* at 438. The plaintiffs brought an action to clear title when the defendants failed to timely close on all five units. The defendants successfully counterclaimed for specific performance of the contract. We affirmed, because the plaintiffs had permitted the defendants to close the purchase of the two related units from the other sellers after the specified closing deadline. Because each of the "similar performances" in the packaged transactions was due "at a single time," we held that the plaintiffs' waiver of the time-essence clause as to the sale of two units also waived those provisions as to the remaining transactions. *Id.*

The "package" waiver rule announced in *Walker* is inapplicable in this case. The facts that plaintiffs and defendants were parties to several secured land transactions and that plaintiffs elected to send group default notices to defendants in November 1997 do not mean that a default in one or more of the transactions triggered a default in the others. Nor, by parity of reasoning, do those facts mean that a subsequent waiver of the time-essence clause in one or more of the transactions automatically precipitated a waiver in any of the others. There is no evidence that the parties entered into the other transactions at the same time as the Lot 4 trust

deed, that their provisions were identical, that their perform-ances were due at the same time, or that they were otherwise interlocked by some unifying agreement.

■ At trial, defendants twice asked the court to take "judicial notice" of six foreclosure actions filed by plaintiffs against defendants regarding other real estate transactions between the parties. However, the record does not reveal whether the trial court acted on defendants' request, and defendants do not assign error to its failure to do so. In any event, the court was not required to comply with defendants' request. The taking of judicial notice is mandatory only "if requested by a party *and* [the court is] supplied with the necessary information." OEC 201(d). Here, defendants requested the court to take judicial notice of the court files in other pending cases between the parties and provided the court with the case numbers of those files. However, defen-dants did not provide the court with any information neces-sary to establish that the lots involved in the other actions were part of a "package deal" with the Lot 4 transaction. Put differently, defendants did not furnish the court with suffi-cient information to explain why any portion of the contents of the court files in the other actions was *relevant* to a dis-puted issue in this action. Because there was no evidence that plaintiffs waived the time-essence provision of the Lot 4 trust deed after November 1997 by accepting late payments on other transactions that were part of a package with it, defendant's re-waiver argument fails.

■■ Finally, defendants point out that, after November 1997, they missed at least three more accruing tax payments on Lot 4. They argue that, by delaying foreclosure until after November 1998 despite the new delinquencies, plaintiffs waived the time-essence provision. That argument is without merit. Waiver of a time-essence provision occurs when *late* payments are accepted or tolerated. *See, e.g., Gordon*, 83 Or App at 549. Defendants paid *no* taxes after November 1997. The trial court did not err in granting foreclosure.

Affirmed.